No. 102,233

STATE OF KANSAS, *Appellant*, v. MATTHEW M. HINES, *Appellee*.

(294 P.3d 270)

Opinion filed February 15, 2013.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellant.

*Janine A. Cox*, deputy appellate defender, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Matthew M. Hines appeals the Court of Appeals' decision to reverse the sentencing court's imposition of a controlling, downward durational departure sentence of 24 months' im-

prisonment for his convictions of attempted second-degree intentional murder and aggravated battery in *State v. Hines*, 44 Kan. App. 2d 373, 236 P.3d 568 (2010). We conclude that based on the facts of this case, the reason cited by the sentencing court for imposing the departure sentence (the victim's request for leniency) does not constitute a substantial and compelling reason to depart from the presumptive sentences for each of Hines' convictions. Thus, we hold that the sentencing court abused its discretion in imposing the 24-month sentence. Accordingly, we affirm the Court of Appeals' decision, vacate the sentence imposed, and remand for resentencing.

## FACTS

According to the probable cause affidavit filed in this case, on May 29, 2008, Wichita police were dispatched to the residence Hines shared with his wife, Charmaine, and their four children. When police arrived, they discovered that Charmaine had suffered significant lacerations to the front of her neck and chest. As a result, Charmaine was transported to the hospital by ambulance.

At the hospital, Charmaine told law enforcement that she arrived home that afternoon and told Hines that she wanted a divorce. While their four children played outside, Charmaine and Hines argued in their bedroom. Hines eventually told Charmaine, "If I can't have you nobody will." He then placed his hands around Charmaine's neck and began choking her. When one of their children walked into the bedroom, Hines let go of Charmaine and told the child to go back outside. Once the child left, Hines resumed strangling Charmaine but stopped again when the child returned to the room. At that point, Charmaine escaped from the bedroom and ran out of the house to a neighbor's house across the street. While standing on the neighbor's front porch, Charmaine began yelling for the neighbor's help.

The neighbor eventually came out onto her porch and began speaking to Charmaine, but Hines, who followed Charmaine to the neighbor's home, started arguing with Charmaine. Hines eventually pulled a utility knife out of his pocket and held it up to Charmaine's neck. He then grabbed her hair and pulled her off the porch

and onto the neighbor's yard, where Charmaine fell to the ground. According to the neighbor, Hines got behind Charmaine and elevated her head with one hand while holding the utility knife with the other. Hines then proceeded to cut Charmaine's neck with the knife from side to side. Hines looked up at the neighbor after she told him to stop, but he proceeded to slash Charmaine again across her neck and on her chest. At least two of Hines' children witnessed him cutting Charmaine. After the brutal attack, Hines ran to his vehicle and drove away. Police arrested Hines later that day.

The State initially charged Hines with attempted first-degree murder but later amended the information to add one count of aggravated kidnapping and two counts of domestic battery. Eventually, Hines and the State entered into a plea agreement where Hines agreed to plead guilty to the amended counts of attempted second-degree intentional murder and aggravated battery in exchange for the State's promise to dismiss the remaining counts. As to sentencing, the State would be allowed to argue for imposition of the aggravated prison sentence in the applicable grid box for each conviction as well as argue for consecutive sentences. Finally, the parties' agreement allowed Hines to argue at sentencing for a downward dispositional departure (which the State could oppose), but the agreement prohibited Hines from arguing for a downward durational departure or for concurrent sentences.

At the plea hearing, Hines pleaded guilty to each count. With regard to the factual basis for each count, Hines agreed that he had cut Charmaine twice across the neck with a utility knife with the intent of committing second-degree murder and that he had also intentionally caused Charmaine great bodily harm or disfigurement—supporting the count of aggravated battery. Accordingly, the sentencing court found that there was a factual basis supporting each of Hines' guilty pleas and, thus, found him guilty of attempted second-degree intentional murder and aggravated battery.

Prior to sentencing, a presentence investigation was conducted which determined that Hines' criminal history score was an H, resulting in an applicable sentencing range of 61-66-71 months' imprisonment for the primary offense of attempted second-degree

murder, a severity level 3 felony. For aggravated battery, a severity level 4 felony, the applicable sentencing range was 38-41-43 months' imprisonment. See K.S.A. 21-4704(a).

Hines filed a motion requesting a dispositional departure sentence. In support of his motion, Hines listed the following mitigating factors: (1) his admission of guilt; (2) probation would promote his reformation given his age of 31; (3) probation would allow him to continue with the anger management and counseling that he was already undergoing; (4) he had no prior felony convictions; (5) his crimes involved a single individual, indicating that he does not pose a threat to society as a whole; (6) Charmaine did not want Hines to be sent to prison and wished for the district court to show leniency; (7) Hines was under duress when he committed the crimes because prior to attacking Charmaine, she had admitted to him that she was having an affair and wanted a divorce; and (8) community based programs would promote Hines' reformation as well as protect the safety interests of society.

At sentencing, Charmaine made a statement in support of Hines' request for a dispositional departure sentence:

"I'm asking the Court to please, you know, as far as my husband, if he could get probation. I'm not saying that what he did wasn't wrong, but I feel like he really wasn't trying to harm me. And I just ask the Court to think about his children, as far as his sentencing. He's really not a—as far as what people are trying to make him out to be. He's a loving father, a loving husband. And I'm just asking the Court, please, to give him probation, to think of his kids."

After Charmaine made her statement, defense counsel argued in favor of granting a dispositional departure sentence, noting that Charmaine and Hines were currently separated and, thus, this was "not a situation where . . . the victim wants to get back together with the defendant and pretend this didn't happen, these individuals are not going to be back together." Defense counsel also pointed out that Hines did not have any prior convictions for any violent offenses and that he pleaded guilty to the two crimes in order to take responsibility for his actions and to have the opportunity to request probation. Furthermore, defense counsel noted that Hines was currently attending counseling for anger management, that he had the support of his family, and that his actions in

this case were an isolated event that was explained by the fact that Charmaine had told him she was having an affair and wanted a divorce.

In addition to defense counsel's statements, Hines addressed the court and expressed sorrow for what he had done to Charmaine and asked the court to grant him probation.

The State responded by contending that a departure sentence was not appropriate based on the facts of the case. The State argued that the aggravated number in the applicable grid box should be imposed for both convictions and the sentences should be ordered to run consecutive.

After hearing statements from all the parties, the sentencing judge stated:

"All right. Well, I've reviewed the file pretty carefully, went over the criminal history and the motion for departure. The plea agreement was worded in kind of a unique way, where I think there was an anticipation that there would be a request for probation, but for some reason there was an agreement that we would be running these cases consecutive and that there wouldn't be a request for a durational departure.

"Fortunately, I have the ability to deviate somewhat from a plea agreement, even where they don't really agree on final disposition. I will tell you that, you know, the crime that was committed here—and I appreciate the victim being here and testifying and asking that Mr. Hines be given an opportunity on probation, and I am going to take into account the victim's wishes, but I don't think that I'm going to be able to grant Mr. Hines probation.

"I will take into account all the facts and circumstances of the case and enter a durational departure. In regard to the motion for departure, I'm going to find that there are substantial and compelling reasons to enter a durational departure. *And the reason being that the victim has appeared here today and is requesting leniency for Mr. Hines. But I can't simply ignore the fact that Mr. Hines, on this day, tried to kill Mrs. Hines.* And in fact, is charged with two counts, not just the attempted second degree murder, but also the aggravated battery." (Emphasis added.)

Ultimately, the sentencing court imposed downward durational departure sentences of 24 months' imprisonment for the attempted second-degree murder and aggravated battery convictions and ordered the sentences to run concurrent.

The State filed a notice of appeal to challenge the sentencing court's decision to impose a downward durational departure sen-

tence. Before the Court of Appeals, the State argued that the court's stated reason for granting the durational departure sentence—the victim's request for leniency—was not legally sufficient for two reasons. First, the State contended that the basis for Charmaine's request for leniency (*i.e.*, her belief that Hines was not trying to harm her) was not supported by substantial competent evidence because (1) Hines pleaded guilty to crimes that proscribed *intentional* conduct; (2) the facts alleged in the probable cause affidavit indicated that Hines had acted with the intent to kill Charmaine; and (3) the district court explicitly found at sentencing that Hines had tried to kill Charmaine. Second, the State argued that even if Charmaine's request for leniency was supported by substantial competent evidence, a victim's request for leniency, standing alone, can never be considered a substantial and compelling basis to grant a departure motion. In support of this contention, the State cited *State v. Favela*, 259 Kan. 215, 233, 911 P.2d 792 (1996).

Finally, the State argued that if the Court of Appeals determined that a downward durational departure sentence was warranted in this case, then the Court of Appeals should find that the extent of the departure was inappropriate, given the fact that the 24-month sentence was less than half of the presumptive mitigated sentence (61 months' imprisonment) in the applicable grid box (3-H) for Hines' attempted second-degree murder conviction.

In addressing the State's arguments, the Court of Appeals first noted that in *State v. Heath*, 21 Kan. App. 2d 410, Syl. ¶ 3, 901 P.2d 29 (1995), it had held that testimony from a victim or his or her family may furnish a substantial and compelling reason for a departure. But the court ultimately concluded that Charmaine's request for leniency did not constitute a substantial and compelling reason for a departure in this case because the facts established that Hines had acted with the intent to kill Charmaine. Accordingly, the Court of Appeals reversed the downward durational departure sentence and remanded for resentencing. *Hines*, 44 Kan. App. 2d at 376-79. We granted Hines' petition for review.

## ANALYSIS

Hines first contends that the Court of Appeals erred when it determined that the sentencing court relied solely on Charmaine's request for leniency as the basis for imposing a durational departure sentence. He argues that the transcript of the sentencing hearing reveals that the court, in addition to Charmaine's request for leniency, also considered the reasons listed in his dispositional departure motion as reasons for imposing a downward durational departure sentence—namely, he took responsibility for his actions, he sought out and participated in anger management counseling, he had no prior felonies, and he posed no threat to society.

K.S.A. 21-4716(a) states:

"[T]he sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines for crimes committed on or after July 1, 1993, unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, *the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure.*" (Emphasis added.)

In addition to requiring a sentencing court to state on the record the basis for imposing a departure sentence, K.S.A. 21-4718(a)(4) states that "[i]n each case in which the court imposes a sentence that deviates from the presumptive sentence, the court shall make findings of fact as to the reasons for departure." This court stated in *State v. Blackmon*, 285 Kan. 719, 729, 176 P.3d 160 (2008), that "[u]nder the mandate of these provisions, the court's findings at the time of sentencing govern as to the reasons for departure."

Again, in granting Hines a downward durational departure sentence, the sentencing judge stated:

"I will take into account all the facts and circumstances of the case and enter a durational departure. In regard to the motion for departure, I'm going to find that there are substantial and compelling reasons to enter a durational departure. *And the reason being that the victim has appeared here today and is requesting leniency for Mr. Hines.*" (Emphasis added.)

Although the sentencing court noted that it had "take[n] into account all the facts and circumstances of the case," the court explicitly stated that Charmaine's request for leniency was "the reason" for imposing a downward durational departure sentence. Fur-

thermore, contrary to Hines' assertion on appeal, the sentencing court did not find that the reasons stated in his dispositional departure motion constituted substantial and compelling reasons for granting the motion. The court clearly stated that it was imposing a durational departure sentence due to Charmaine's request for leniency. That reason now governs as the sole basis for the sentencing court's decision.

We next determine whether a victim's request for leniency can ever be a substantial and compelling reason for imposing a departure sentence in any case. This issue raises a question of law subject to unlimited review. See *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011).

In the case of a downward departure, K.S.A. 21-4716(c) contains a nonexclusive list of substantial and compelling mitigating factors. "Sentencing courts may consider other, nonstatutory factors when imposing a departure sentence as long as there is evidence in the record to support such factors and the use of the factors would be consistent with the intent and purposes of the sentencing guidelines. [Citations omitted.]" *Blackmon*, 285 Kan. at 725. K.S.A. 21-4703(n) defines "mitigating factors" as

"substantial and compelling reasons justifying an exceptional sentence whereby the sentencing court may impose a departure sentence outside of the standard sentencing range for an offense. Mitigating factors may result in dispositional or durational departures and shall be stated on the record by the court."

We have stated that in order for a mitigating factor to be substantial, "the reason must be real, not imagined, and of substance, not ephemeral." *Blackmon*, 285 Kan. at 724. In order to be compelling, the mitigating factor "must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." *Blackmon*, 285 Kan. at 724.

Various constitutional and statutory mandates indicate that a victim's request for leniency can constitute a substantial and compelling reason to impose a departure sentence. Article 15, § 15 of the Kansas Constitution provides that victims of crime have a right "to be heard at sentencing or at any other time deemed appropriate

by the court." With regard to a sentencing departure hearing, K.S.A. 21-4718(a)(1) provides that "[t]he victim of a crime or the victim's family shall be notified of the right to be present at the hearing." This statute further requires that "[t]he court shall review the victim impact statement." Finally, K.S.A. 21-4716(d) states:

"In determining aggravated or mitigating circumstances, the court shall consider:
(1) Any evidence received during the proceeding;
(2) the presentence report;
(3) written briefs and oral arguments of either the state or counsel for the defendant; and
(4) any other evidence relevant to such aggravating or mitigating circumstances that the court finds trustworthy and reliable."

In *Heath*, the Court of Appeals cited these constitutional and statutory provisions in support of its conclusion that a "trial court may consider the statements of crime victims or their families as evidence of either aggravating or mitigating circumstances." *Heath*, 21 Kan. App. 2d at 416-17. Cases from other jurisdictions support this proposition. See *State v. Eastridge*, 5 So. 3d 707, 709 (Fla. Dist. App. 2009); *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008); *People v. Washington*, No. 235,241, 2004 WL 243369, at *2-3 (Mich. App. 2004) (unpublished opinion).

The State contends that this court's decision in *Favela* established as a matter of law that a victim's request for leniency cannot, by itself, be a substantial and compelling reason to impose a departure sentence. In that case, the defendant had witnessed his brother being stabbed by Willard LaGrange. After taking his brother to the hospital, the defendant returned to the scene of the stabbing and brandished a gun, threatening to kill LaGrange but not pointing his gun at any person. Eventually, he surrendered to the police without firing the weapon. He pleaded no contest to attempted second-degree murder, which, with a criminal history of H, carried a presumptive prison sentence of 51 to 59 months.

The defendant filed a motion for departure from the presumptive sentence, listing six mitigating factors that he contended justified a departure sentence. One of these factors was his claim that no harm resulted from his offense and, thus, the harm was signif-

icantly less than typical for attempted second-degree murder. Ultimately, the district court found that the six mitigating factors listed in the defendant's motion were substantial and compelling reasons justifying a departure sentence. Accordingly, the court sentenced the defendant to an underlying sentence of 14 months' imprisonment and placed the defendant on probation for 36 months.

This court granted the defendant's petition for review after the Court of Appeals vacated the defendant's sentence and remanded for resentencing based on its conclusion that the district court's reasons for departing were not substantial and compelling. This court reversed the Court of Appeals' decision. Employing the standard then applicable for reviewing a departure sentence, the *Favela* court found that substantial competent evidence supported each of the district court's reasons for departing and then concluded that each reason (other than the fact that the defendant was 17 when he committed the crime) constituted a substantial and compelling reason justifying departure as a matter of law. *Favela*, 259 Kan. at 224-39.

In determining that substantial competent evidence supported the factual finding that no harm resulted from the defendant's offense and, thus, the harm was significantly less than typical for attempted second-degree murder, the *Favela* court noted that the presentence investigation report contained a statement from LaGrange, the victim, where he stated: " 'I feel that the crime [the defendant] has been charged with is wrong—he only threatened me.' " *Favela*, 259 Kan. at 231. The *Favela* court found that LaGrange's statement indicated "that he was not harmed either emotionally or physically by the crime." *Favela*, 259 Kan. at 231. The court then proceeded to state, rather cryptically, that

"[i]n deciding to depart downward, the trial court could, as part of the whole picture, consider the facts concerning the attempt as well as the victim's thoughts on the crime as to how the defendant should be sentenced. *Standing alone, the court's finding would be insufficient to show a substantial and compelling reason to depart.* However, common sense and experience tells us that this is not a typical attempted second-degree murder case and that the victim's attitude is not a typical victim's attitude in an attempted second-degree murder case. Therefore, the trial court should be able to consider it as part of the overall picture. The trial court

did not commit reversible error in considering the degree of harm as a departure factor." (Emphasis added.) *Favela*, 259 Kan. at 231-32.

The State contends that the italicized portion of the quote establishes that a victim's request for leniency cannot, by itself, constitute a substantial and compelling reason to depart from the sentencing guidelines. The State reads too much into the quote. If anything, that language implies that the district court's "finding" (*i.e.*, no harm resulted from the defendant's offense and, thus, the harm was significantly less than typical for an attempted second-degree murder) would not, by itself, constitute a substantial and compelling reason to grant a departure sentence. But this conclusion would be contrary to the *Favela* court's subsequent statement in the opinion regarding the district court's lack of finding harm.

"The trial court found the fact that no harm resulted from the defendant's offense and, as such, the harm was significantly less than typical for such an offense was a substantial and compelling reason justifying departure. This factor is based on the mitigating circumstance found in K.S.A. 1994 Supp. 21-4716(b)(1)(E). Again, the [Court of Appeals] dissent found that since this factor was based on a specifically listed mitigating circumstance, it should be given great deference. The dissent found this reason constituted a substantial and compelling reason justifying departure. [Citation omitted.] The factor indicates the defendant is not a serious or violent offender and, thus, the factor furthers one of the purposes of the guidelines. *As such, this factor is a substantial and compelling reason as a matter of law and justifies departure.*" (Emphasis added.) *Favela*, 259 Kan. at 238-39.

Regardless of how one interprets the *Favela* court's inharmonious statements regarding the lack of harm factor, the *Favela* opinion did not explicitly state or imply that a victim's request for leniency can never constitute a substantial and compelling reason to grant a departure sentence. Accordingly, the State's argument regarding *Favela* is without merit. Based on the constitutional and statutory provisions cited above, this court's decision in *Blackmon*, and the Court of Appeals' decision in *Heath*, if a victim's request for leniency is substantial, then the request for leniency can, in and of itself, justify a sentencing court's decision to impose a departure sentence. See *Blackmon*, 285 Kan. at 725 (If any of the factors articulated by the sentencing court would justify the departure, the decision will be upheld on appeal.).

Accordingly, we now determine whether the sentencing court erred in concluding that Charmaine's request for leniency constituted a substantial and compelling reason to impose a durational departure sentence in this case. We apply an abuse of discretion standard of review in determining this issue. *Spencer*, 291 Kan. at 807.

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Again, in order for a mitigating factor to be substantial, "the reason must be real, not imagined, and of substance, not ephemeral." *Blackmon*, 285 Kan. at 724. In order to be compelling, the mitigating factor "must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." *Blackmon*, 285 Kan. at 724. In *State v. McKay*, 271 Kan. 725, 730, 26 P.3d 58 (2001), we recognized that mitigating factors which may in one case justify departure may not in all cases justify a departure.

The Court of Appeals decision in *Heath* offers some insight into when a victim's statement can provide a substantial and compelling reason for imposing a departure sentence. Defendant Danny Heath was a driver of a car involved in an accident resulting in the death of his coworker and friend, Kord Cole. Testing determined that Heath's blood-alcohol level was .151 percent. Heath ultimately pleaded no contest to involuntary manslaughter, a severity level 5 person felony.

At sentencing, both of Cole's parents asked the court for leniency, specifically requesting that Heath be given probation. The sentencing court departed from the presumptive sentence of imprisonment and placed Heath on probation for 60 months. In support of its decision, the court cited the parents' statements as one of the reasons for imposing the dispositional departure sentence. On appeal, the Court of Appeals held that based on the facts of

the case, the parents' request for leniency was a substantial and compelling reason justifying the departure sentence. The court stated:

"The facts of this case give the statements of the victim's parents reliability and trustworthiness. Heath had worked with the victim for two years preceding the accident. On the day of the accident, the two were working together on a construction site in Wichita. They made a daily commute together from Hutchinson to Wichita to get to work. In addition to their working relationship, Heath and the victim were also social friends. After leaving work on the day of the accident, they went to a tavern adjacent to the work area and had a couple of beers. After driving 25 to 35 miles back to Hutchinson, Heath swerved to miss an object—a piece of a tire—in the roadway, causing the car to slide off the road into a utility pole.

"Other events in this case also demonstrate the support the victim's family showed for Heath. The day Heath was released from the hospital, the victim's parents came to his residence, at which time he promised them he would never drink alcoholic beverages again. The victim's sister also visited Heath after he was released from the hospital and showed her support by sitting beside Heath's wife at the preliminary hearing. Last, before entering the courtroom on the day of the departure hearing, the victim's mother came up to Heath, hugged him, and told him he needed to take care of his family.

"Finally, Heath also showed remorse for what he had done. He continuously recognized his responsibility in causing the death of his close friend, Kord Cole. Heath's parents and his brother had died prior to the accident, so he testified he knew the pain and the hurt the victim's family were going through and he was sorry he caused it. Further, Heath testified he had not consumed alcohol since the accident, and he assured the court he could realistically live up to his pledge of abstinence from alcohol." *Heath*, 21 Kan. App. 2d at 417.

The parents' request for leniency was obviously motivated by their son's close relationship with Heath and the fact that Cole's death was accidental. Furthermore, because the parents advocated on behalf of Heath at sentencing, they likely found his expression of sorrow and his vow to abstain from alcohol to be sincere. As the Court of Appeals found, the record clearly supported the finding of substantial and compelling evidence supporting the trial court's reasons justifying departure. Accordingly, a reasonable person could conclude that there was substance behind the parents' request for leniency and that their reason for requesting leniency would force a court, based on the facts of the case, to abandon the

status quo and to depart from the sentencing guidelines. See *Blackmon*, 285 Kan. at 724

In this case, the sentencing court imposed a durational departure sentence upon Hines based solely on Charmaine's request for leniency. The judge failed to state on the record what he found persuasive about Charmaine's request for leniency, but the transcript of sentencing shows that Charmaine's request for leniency was based on her feeling that Hines "wasn't trying to harm" her on the day of the altercation and that Hines was a loving father and husband.

Notably, the court found at sentencing that Hines was trying to kill Charmaine on the day of the altercation, indicating that the judge did not find Charmaine's claim to the contrary believable. And without Charmaine elaborating on what makes Hines a loving father and husband, the facts of this case would force a reasonable person to simply not reach that conclusion about Hines. According to the probable cause affidavit filed in conjunction with the original complaint, Hines strangled Charmaine two separate times in their bedroom before Charmaine escaped from the couple's house and ran to a neighbor's house seeking help. Hines followed Charmaine onto the neighbor's front porch and, after briefly arguing with her, pulled a utility knife from his pocket and held it to the side of Charmaine's neck as he grabbed her by her hair. He then forced her to walk down the porch stairs and onto the neighbor's front yard where he (in front of his neighbors and two of his children) proceeded to cut Charmaine twice across her neck from side to side and then slashed her from the bottom of her neck to the top of her breast bone. Charmaine sustained significant lacerations to the front of her neck and chest, resulting in her being transported to the hospital by ambulance. As a result of these actions, Hines pleaded guilty to attempted second-degree intentional murder and aggravated battery. He conceded at his plea hearing that he cut Charmaine two times across her neck with the intent to kill her and that he also intentionally caused great bodily harm or disfigurement to Charmaine.

A reasonable person would certainly not find much substance behind Charmaine's request for leniency based on her belief that

Hines is a loving husband, given the fact that he strangled her twice and cut her with a utility knife with the intent of killing her. See *State v. Powell*, 696 So. 2d 789, 791 (Fla. Dist. App. 1997) ("In the context of domestic violence, the victim may have many conflicting emotions. A defendant and other family members could easily pressure the victim to request leniency. We would not wish to encourage trial courts to rely upon this reason for a downward departure sentence in a case involving domestic violence."). Furthermore, without more explanation from Charmaine, one cannot put much weight on her belief that Hines is a loving father; he certainly had no qualms about battering, stabbing, and attempting to kill Charmaine in the presence of his children. To the contrary, the brutality perpetrated by Hines upon the mother of his children raises great concern regarding his ability to adequately control his violent impulses in light of the stresses and strains encountered in parenting. *Cf. State v. Chrisco*, 26 Kan. App. 2d 816, 818-20, 824-25, 995 P.2d 401 (1999) (court stated that "[w]hile we agree that supporting a family may be a proper departure factor in certain cases, its application is questionable when there is reason to believe a defendant may harm the very children he is supporting").

Unlike the parents' request for leniency in *State v. Heath*, 21 Kan. App. 2d 410, 413, 901 P.2d 29 (1995), there appears to be little substance behind Charmaine's request for leniency here. And based on the record currently before us, Charmaine's request for leniency would certainly not force a reasonable person to abandon the status quo and impose sentences less than what are prescribed by the sentencing guidelines. Accordingly, we conclude that the sentencing court abused its discretion when it decided to impose a durational departure sentence based solely on Charmaine's request for leniency.

In *Blackmon*, we stated that

"when a sentencing court fails to state substantial and compelling reasons for a downward departure from a presumptive sentence on the record at an initial sentencing hearing and as a result the sentence is vacated on appeal, upon remand the sentencing court may cite appropriate reasons justifying the imposition of a downward departure sentence and may impose such a sentence subject to the usual review process." *Blackmon*, 285 Kan. at 732.

The record on appeal indicates that the sentencing court may have had additional reasons for departure, but it did not clearly state those reasons on the record at the sentencing hearing. Accordingly, we vacate Hines' sentences and remand for resentencing. If the court determines at resentencing that there are substantial and compelling reasons for imposing a departure sentence (which can include a request for leniency from Charmaine if she chooses to make such a request at resentencing and gives additional reasons for why she is requesting leniency), then the court may impose such a sentence, but it should clearly state on the record all the reasons why it is imposing a departure sentence. If the sentencing court chooses to impose a departure sentence, the court's decision would naturally be subject to appellate review pursuant to K.S.A. 2011 Supp. 21-6820.

The judgment of the Court of Appeals reversing the district court is affirmed. The sentences are vacated, and the case is remanded to the district court with directions.