NOT DESIGNATED FOR PUBLICATION

No. 113,649

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES WILLARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI A. BOLTON FLEMING, judge. Opinion filed May 6, 2016. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BUSER and BRUNS, JJ.

*Per Curiam*:  James D. Willard contends that the district court abused its discretion by partially denying his motion for a departure sentence. Although the district court granted him a downward durational departure from 216 months to 168 months, Willard does not believe this departure was sufficient. Specifically, he argues that the district court erred by not granting him a more favorable durational departure than the one to which the State agreed to recommend in a plea agreement. Willard also asserts that the State should have been required to prove his criminal history beyond a reasonable doubt. Because we do not find either of Willard's arguments to be meritorious, we affirm his sentence.

1

In the early morning hours of October 12, 2013, the Pittsburg Police Department found Arlin Evans lying on the sidewalk in front of an apartment building with a stab wound to his chest. Evans died shortly after being transported to a nearby hospital. Later that afternoon, police officers questioned Willard, and he eventually admitted to stabbing Evans.

Under the terms of a plea agreement signed on November 21, 2014, Willard agreed to plead no contest to voluntary manslaughter, a severity level 3 person felony. Moreover, Willard agreed that his criminal history category was B. Although his presumptive sentence would have been 216 months' imprisonment, the State agreed as part of the plea agreement to support a request for a downward durational departure to 168 months and to allow Willard to argue for an even greater durational departure. Willard entered his plea on the same day he signed the agreement, and it was accepted by the district court.

On December 31, 2014, Willard filed a motion for durational departure, arguing that substantial and compelling reasons existed to grant a departure, including:  (1) he had "no brushes with the law for an extended amount of time"; (2) he was attending college at the time of the stabbing; (3) Evans was the aggressor in the altercation that led to his death; (4) Willard was aware of Evans' aggressive nature; (5) Evans "aggressively hunted [him] down" and threatened him to the degree that he reasonably feared for his life; (6) Willard took every opportunity to deescalate the situation before stabbing Evans; (7) Willard played a minor or passive role in the crime; (8) if his actions were not subjectively reasonable, they amounted to nothing more than a reasonable lapse in judgment; (9) Willard suffered from AIDS, resulting in a heightened sense of fear for his safety as well as a lowered ability to heal from wounds; (10) Willard suffered from a

severe narcotics addiction and was under the influence of drugs and alcohol on the night of the offense; and (11) Willard had the support of his wife and child.

The district court conducted the sentencing hearing over 2 days on January 30, 2015, and February 6, 2015. On the first day of the sentencing hearing, Willard testified in support of his motion. In summary, Willard testified that he was homeless and unemployed at the time of the stabbing. He stated that he had moved to Pittsburg to go to college but that he stopped attending school when he got sick and lost his job. Willard explained that he suffered from AIDS, which makes it harder for his body to heal from wounds.

Willard described his relationship with Evans as a neighbor, coworker, and friend. The two of them had worked construction jobs together and would occasionally hang out and get high together. The evening before the stabbing, Willard claimed that he went to Evans' residence to use the restroom. When Willard arrived, Evans was evidently getting high with a friend. After using the restroom, Willard left and returned to his niece's apartment where he was staying. At the apartment, he used methamphetamine, drank a beer, and took a Xanax pill. Later that night Evans came to the apartment twice to ask Willard whether he had stolen his cell phone when he was at his residence using the restroom, which Willard denied.

Around 3:30 a.m. the next day, Evans appeared outside of the apartment demanding that Willard meet him outside. According to Willard, he knew Evans carried a knife and he had previously witnessed him cut someone for making an upsetting remark to his girlfriend. So, Willard took the largest knife he had from his suitcase and took it with him when he went outside to speak with Evans. Willard claimed that Evans was angry and continued to accuse him of stealing his phone. Willard testified that Evans swung at him and hit his hand with "something hard" that did not feel like a fist. Willard admitted that he responded by stabbing Evans twice before Evans ran away and Willard

3

returned to his niece's apartment. Investigators later found a stab wound under Evans' left arm near his chest as well as a stab wound to his back. Investigators also found multiple punctures to Evans' jacket that did not correspond to any wounds. Willard testified that he stabbed Evans because he feared for his life and because he knew it would take him a long time to heal from an injury.

No other witnesses testified at the sentencing hearing. Following Willard's testimony, an exhibit listing some certificates of achievement was admitted into evidence. Furthermore, the State admitted the full transcript and video of Willard's interview with police officers as well as Evans' autopsy report into evidence. The district court continued the sentencing hearing to a later date so that it could review the exhibits.

One week later on February 6, 2015, the district court resumed the sentencing hearing. During argument, Willard's attorney clarified that he was requesting a downward durational departure to between 5 and 7 years. The State maintained that the district court should impose the agreed upon term of 168 months' imprisonment. It argued that Willard did not act in self-defense but that he acted out of anger when he killed Willard. After considering evidence and arguments of counsel, the district court found that there were some substantial and compelling reasons to justify a downward durational departure but only to the extent agreed upon by the parties. Accordingly, the district court sentenced Willard to serve 168 months in prison and ordered him to pay $6,664.43 in restitution. Thereafter, Willard filed a timely notice of appeal.

ANALYSIS

Willard contends on appeal that the district court should have granted him a more favorable downward durational departure. When a defendant challenges the extent of a downward durational departure, we review the decision of the district court for an abuse of discretion. In particular, we are to determine whether the departure is consistent with

4

the purposes of the sentencing guidelines and whether it is proportionate to the crime's severity and the defendant's criminal history. *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011). A district court abuses its discretion when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

A district court must impose the presumptive sentence provided by the sentencing guidelines unless it finds substantial and compelling reasons to impose a departure sentence. K.S.A. 2015 Supp. 21-6815(a). "Substantial" means something real, not imagined; something with substance, not ephemeral. "Compelling" means that the case's circumstances require the district court "to 'abandon the status quo' and to venture beyond or depart from the ordinary sentence." *State v. Rochelle*, 297 Kan. 32, 46, 298 P.3d 293, *cert. denied* 134 S. Ct. 270 (2013).

If the district court decides to depart, it must state the substantial and compelling reasons for the departure on the record at the time of sentencing. K.S.A. 2015 Supp. 21-6815(a). The sentencing statute provides a nonexclusive list of mitigating factors that a district court may consider in making such a decision. K.S.A. 2015 Supp. 21-6815(c). In addition, a district court is free to consider nonstatutory mitigating factors as long as the record supports such factors and "'the use of the factors would be consistent with the intent and purposes of the sentencing guidelines.'" *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013) (quoting *State v. Blackmon*, 285 Kan. 719, 725, 176 P.3d 160 [2008]).

Here, the district court granted Willard a downward durational departure from 216 months to 168 months. However, it denied Willard's request for an additional downward durational departure after considering the evidence presented at the sentencing hearing—which included Willard's testimony, the transcript and video of his interview with police, and Evans' autopsy report. In other words, after considering the evidence and the

arguments of counsel, the district court concluded that there were not substantial and compelling reasons to grant a greater downward durational departure beyond 168 months.

In explaining its decision on the record, the district quoted several statements Willard made during the police interview suggesting that he had not acted in self-defense when he stabbed Evans. For instance, the district court pointed to a comment made by Willard to an investigator in which he stated:

"If he come up on me, you know, I am going to tell you that, and I ain't bullshitting with you. And if I am already mad, I am mad, and I will hurt you quick. I mean, I don't care who it is, if he is angry and he is tempting like that."

The district court went to great lengths to review the facts on the record. In addition, the district court explained those things that it found to be true and those things that it found not to be credible. The district court then explained its rationale for finding some substantial and compelling reasons to depart. In particular, the district court ultimately found:

"[T]hat the victim was a participant in the criminal conduct associated with the crime of conviction; that both the defendant and the victim were frequent users of narcotics . . . that the defendant suffers from a severe narcotics addiction, and that the use of drugs and alcohol significantly influenced the behavior of [the] parties that night, and also that Mr. Willard has family support."

The district court, however, also noted on the record that it did not find it to be credible that Willard was acting in self-defense when he stabbed Evans.

Willard argues that the circumstances surrounding the stabbing, when viewed as a whole, support his request for a greater downward durational departure. He does not claim that the district court's decision was based on an error of fact or law. Accordingly,

we are left to decide only whether the district court's decision was arbitrary, fanciful, or unreasonable. To the extent Willard asks us to reweigh the evidence, we are not in a position to do so. See *State v. Llamas*, 298 Kan. 246, 254, 311 P.3d 399 (2013). Moreover, a review of the record reveals that the district court did an excellent job of weighing the evidence and making the appropriate findings. We conclude that the district court's decision was reasonable and not arbitrary or fanciful.

Lastly, Willard argues that the district court violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to increase his sentence without requiring the State to prove them beyond a reasonable doubt. He acknowledges that our Supreme Court previously resolved this issue in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). Panels of this court are bound to follow precedent established by our Supreme Court unless there is an indication that it is departing from the precedent. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). *Ivory*'s progeny does not suggest any such departure. See *State v. Tahah*, 302 Kan. 783, 795-96, 358 P.3d 819 (2015) *cert. denied*, 136 S. Ct. 1218 (2016); *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015); *State v. Overman*, 301 Kan. 704, 716-17, 348 P.3d 516 (2015). As such, the imposition of the enhanced sentence was not unconstitutional.

Affirmed.