IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,237

STATE OF KANSAS,
*Appellant,*

v.

DAVID CLAYTON MONTGOMERY,
*Appellee.*

SYLLABUS BY THE COURT

1.

For purposes of a potential downward departure sentence, when a court is evaluating whether a nonstatutory factor can be a mitigating factor as a matter of law, the court must consider whether the Legislature, through the sentencing grid, has already taken the factor into account. If it has, then the factor cannot be a mitigating factor as a matter of law.

2.

The Legislature, through the sentencing guidelines, has accounted for the difference in character between a defendant's past offenses and the present offense.

3.

The fact that a defendant's criminal history does not include similar or identical crimes to the crime of conviction cannot be a mitigating factor as a matter of law.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 24, 2020. Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed August 27, 2021. Judgment of the Court of Appeals vacating the sentence is affirmed. The sentence is vacated, and the case is remanded to the district court with directions.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellant.

*James M. Latta*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: David Clayton Montgomery argues the dissimilarity between past offenses and the current offense of conviction can support departing from the presumptive sentence established by the Kansas Sentencing Guidelines Act (KSGA or Guidelines) as a matter of law. The district court agreed, finding a substantial and compelling reason for departure based on the dissimilarity between Montgomery's past offenses from the present offense, aggravated domestic battery. The panel reversed, holding the district court's reason for departing legally insufficient. We agree with the panel. We therefore vacate Montgomery's sentence and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

Montgomery pled guilty to aggravated domestic battery based on allegations he strangled his girlfriend, C.G., on May 27, 2019. The district court entered a no-contact order, which Montgomery admittedly violated.

Montgomery moved for a downward departure sentence. He argued any one of three proffered reasons justified finding substantial and compelling reasons for departure:

(1) acceptance of responsibility and cooperation with law enforcement; (2) community corrections would better promote his reformation while still protecting public safety interests; and (3) lack of recent and significant criminal history, pointing out 6 of his 13 prior convictions were unscored traffic offenses and the other 7 resulted from 3 cases in 2013 and 2014.

At sentencing, the State asked the court to sentence Montgomery to 31 months in prison rather than probation under the plea agreement, arguing it was no longer bound based on Montgomery's violation of the no-contact order. Montgomery continued to violate the no-contact order by calling C.G. from jail. The State explained a witness saw Montgomery choking C.G. after his release from custody. The State also played video of the incident leading to charges, arguing it showed similar behavior. The State emphasized Montgomery engaged in violence in a past burglary conviction, in which Montgomery posed as a plain-clothes police officer to gain entry to his victim's home. He made the victim, who believed Montgomery had a gun, stay in a bathroom while he burglarized the house. The victim's friend arrived while Montgomery was burglarizing the house. Montgomery forced the friend to the ground, kicked him in the ribs, and stole money from the friend's wallet. Montgomery was apparently freshly off postrelease for that burglary when he strangled C.G.

The district court ordered 60 days' shock time with no credit for time in custody and imposed the agreed 24 months' probation with an underlying sentence of 31 months. The sentencing judge explained his reasons:

> "All right. The Court does understand the position of the prosecutor in wanting to break the plea agreement which they agreed to on August 12, 2019, as to probation at the Adult Residential Center. And the Court is concerned by the email that I received from the prosecutor and the report in Kansas City, Missouri. I understand that that is a report and nothing is charged there at this point. . . .

"The *determining factor is multiple things* in this case. Although the defendant is a criminal history score of B, those charges—there are no other domestic violence charges within the criminal history. I understand there were some felonies. There were burglaries as pointed out by the prosecutor. There were a number of other things that were related to license and driving on a suspended as well that make him a B.

"The Court is going to order 60 days shock time. The defendant will not be given credit for the time in custody, for the 32 days that [Montgomery's counsel] has continually alluded to. He'll serve 60 days. The Court will order a 31-month underlying sentence, 24-month probation to the Adult Residential Center. The defendant is to have a domestic violence assessment and substance abuse evaluation and follow any recommendations of those assessments. No contact with the victim, costs and fees to the defendant and domestic violence fees." (Emphasis added.)

The State timely appealed.

The Court of Appeals held the district court's sole reason for departing legally insufficient, vacated the sentence, and remanded the case for a new sentence. *State v. Montgomery*, No. 122,237, 2020 WL 4249425 (Kan. App. 2020) (unpublished opinion).

Montgomery petitioned for review. Jurisdiction is proper. K.S.A. 60-2101(b) (Supreme Court jurisdiction to review Court of Appeals cases on petition for review).

ANALYSIS

A district court shall impose the presumptive sentence established by the Sentencing Guidelines unless the sentencing judge "finds substantial and compelling reasons to impose a departure sentence." K.S.A. 2018 Supp. 21-6815(a). In considering whether such reasons exist, the district court may consider whether mitigating factors support granting a departure. See K.S.A. 2018 Supp. 21-6815(c). Our statute defines mitigating factors to be "a substantial and compelling reason justifying an exceptional

4

sentence whereby the sentencing court may impose a departure sentence outside of the standard sentencing range for a crime." K.S.A. 2020 Supp. 21-6803(n). A sentencing judge imposing a departure sentence shall state on the record the substantial and compelling reasons supporting the departure. K.S.A. 2018 Supp. 21-6815(a).

The State or defendant may appeal a departure sentence. K.S.A. 2020 Supp. 21-6820(a). Appellate review is limited to determining "whether the sentencing court's findings of fact and reasons justifying a departure: (1) [a]re supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure." K.S.A. 2020 Supp. 21-6820(d).

Substantial means "real, not imagined, and of substance, not ephemeral." *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). And a compelling reason is one that "forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose." 285 Kan. at 724.

We recently addressed how appellate courts review a departure sentencing decision in *State v. Morley*, 312 Kan. 702, 479 P.3d 928 (2021). We noted confusion about how the abuse of discretion standard applied to review of departure decisions. See 312 Kan. at 707-09. We set out a three-step framework to resolve any confusion, in which appellate courts:

> "(1) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (2) if it can, then decide whether that nonstatutory factor's existence is supported by the record; and (3) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court." 312 Kan. at 711.

5

We further explained the inquiries at each step:

> "(1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion; (2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. And it is important to emphasize that only the first step involves a legal question, subject to unlimited review." 312 Kan. at 711.

The remaining two questions are reviewed for abuse of discretion. 312 Kan. at 711. An abuse of discretion occurs when the lower court's action is "(1) based on an error of fact, (2) based on an error of law, or (3) unreasonable." 312 Kan. at 710.

When reviewing a departure sentence, "[a]s long as one factor relied upon by the sentencing court is substantial and compelling, the departure sentence should be upheld." *Blackmon*, 285 Kan. at 725. And mitigating factors may be considered collectively sufficient to constitute substantial and compelling reasons even where one standing alone would not suffice. 285 Kan. at 725.

Of note, whether the district court relied on a single factor or multiple factors is not entirely clear in this case. The district court used a singular subject and verb conjugation but immediately followed those with identification of multiple factors: "The *determining factor is multiple things* in this case." (Emphasis added.) Despite stating there were multiple factors, what follows is a discussion of only one factor, the dissimilarity the district court perceived between the current offense, domestic violence, and past offenses: "[T]here are no other domestic violence charges within the criminal history. I understand there were some felonies. There were burglaries as pointed out by the prosecutor. There were a number of other things that were related to license and driving on a suspended [license]." We acknowledge the lack of clarity in the district court's pronouncement and the existence of other factors argued to the district court.

6

We nevertheless conclude from the district court's own articulation that the judge relied solely on the perceived difference in past offense and the present offense in deciding to depart, a nonstatutory factor. We now consider whether the difference in past and present offense may support departing from the guideline sentence.

The KSGA provides a nonexclusive list of mitigating factors a sentencing judge may consider when determining whether to impose a departure sentence. K.S.A. 2018 Supp. 21-6815(c)(1). Statutory factors include the victim's role as an aggressor or participant in the alleged criminal conduct; the offender played a minor or passive role in the crime or participated under duress or compulsion; the offender lacked substantial capacity for judgment due to physical or mental impairment; the defendant or his or her children suffered a continuing pattern of physical or sexual abuse by the victim; the degree of harm or loss is significantly less than typical for such offense; or the offender was a combat veteran who committed the crime as a result of injury, including major depressive disorder, polytrauma, post-traumatic stress disorder, and traumatic injury. See K.S.A. 2018 Supp. 21-6815(c)(1)(A)-(F).

"[A] sentencing court can consider nonstatutory [mitigating] factors as long as the factors are consistent with the principles underlying the KSGA." *State v. Bird*, 298 Kan. 393, 398-99, 312 P.3d 1265 (2013). The *Bird* court recognized three legislative purposes underlying the KSGA: "(1) to reduce prison overcrowding, (2) to protect public safety, and (3) to standardize sentences so similarly situated offenders are treated the same." 298 Kan. at 399. Other underlying principles we have recognized include: reserving incarceration for serious/violent offenders who threaten public safety; imposing sanctions based on harm inflicted; uniformity of sanctions not related to socioeconomic factors, race, or geography; clear, understandable penalties; avoiding imprisonment being used as a tool to gain education or job skills; "and the system must be rational to allow policymakers to allocate resources." 298 Kan. at 399-400.

7

Kansas courts have recognized various nonstatutory mitigating factors as consistent with the purposes of the Kansas Sentencing Guidelines. *Morley*, 312 Kan. at 702 (acceptance of responsibility); *Bird*, 298 Kan. at 398-401 (evidence defendant is not a threat to society); *State v. Hines*, 296 Kan. 608, 617-19, 294 P.3d 270 (2013) (victim's request for lenience); *State v. Spencer*, 291 Kan. 796, 814, 818, 248 P.3d 256 (2011) (support of family and friends); *State v. Favela*, 259 Kan. 215, 236, 911 P.2d 792 (1996) (differences in prior convictions not reflected in sentencing grid one of many factors supporting departure); *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 5, 901 P.2d 1 (1995) (passage of time since last felony committed); *State v. Heath*, 21 Kan. App. 2d 410, 415, 901 P.2d 29 (1995) (time elapsed since and relatedness of prior felonies, relying on *Richardson*).

Montgomery argues the difference in offenses alone can constitute a mitigating factor as a matter of law. The State disagrees, arguing the Guidelines adequately account for past convictions and therefore differences in past convictions are not a basis for departure. The State emphasizes the Guidelines consider the seriousness of past offenses by distinguishing felonies from misdemeanors and whether the offense is a crime of violence or a property offense. In this case, we agree with the State. To see why, we return to the purpose and design of the Guidelines.

The Legislature created the Sentencing Guidelines Commission (the Commission) in 1989. The Legislature charged the Commission with developing what has become the sentencing grid "based on fairness and equity" and to "provide a mechanism for linking justice and corrections policies." K.S.A. 74-9101(b)(1). One purpose of the grid was to "establish rational and consistent sentencing standards which reduce sentence disparity, to include, but not be limited to, racial and regional biases which may exist under current sentencing practices." K.S.A. 74-9101(b)(1).

8

The Commission identified a series of goals, including the promotion of public safety by incarcerating violent offenders; reduction of sentence disparity to eliminate any racial, geographic, or other bias existing in sentencing; establishing sentences proportional to the severity of the offense and the harm to the victim; establishing easy-to-understand presumptive sentences to promote truth in sentencing. Recommendations of the Kansas Sentencing Commission 2 (1991). To further those goals, the Commission recommended a scale that accounted for crime seriousness and criminal history; a sentencing grid establishing presumptive sentences to be imposed in most cases, which the Legislature adopted and has since periodically revised. See *State v. Murdock*, 299 Kan. 312, 320-21, 323 P.3d 846 (2014) (Rosen, J., dissenting). See generally Recommendations of the Kansas Sentencing Commission.

The Guidelines apply "equally to all offenders in all parts of the state." K.S.A. 2020 Supp. 21-6802(a). The Guidelines provide two sentencing grids for felony offenses, one for nondrug offenses and another for drug offenses. Each contains two axes, one of which reflects the severity level of the current offense and one that reflects the offender's criminal history. See K.S.A. 2020 Supp. 21-6804; K.S.A. 2020 Supp. 21-6805. The Guidelines establish a presumptive sentence for each severity level, subject to the sentencing court's discretion to depart. The Guidelines further instruct, "The appropriate punishment for a felony conviction should depend on the severity of the crime of conviction when compared to all other crimes and the offender's criminal history." K.S.A. 2020 Supp. 21-6804(d). The Guidelines weigh person crimes more heavily than property crimes both in assigning the severity level of the current crime and in assigning a criminal history score that account for the nature of past offenses as either person or nonperson. See generally K.S.A. 2020 Supp. 21-6804; 21-6805.

In short, the Guidelines account for differences in the character of past and present offenses. Therefore, we conclude a difference in offenses standing alone cannot be a nonstatutory mitigating factor because doing so contravenes a purpose of the Guidelines. The district court erred in departing here to the extent it did so based solely on what it perceived to be a difference in character between Montgomery's past person felonies and his present person felony of conviction.

Montgomery argues caselaw from this court and the Court of Appeals already established that the dissimilarity between the present crime of conviction and past offenses constitutes a mitigating factor as a matter of law. But none of the cases on which he relies went that far. Not one of these cases concluded any difference *standing alone* supported imposing a departure sentence.

In *Richardson*, the Court of Appeals concluded a sentencing court can consider a factor the sentencing grid does not take into account. There, the factor was the passage of time since Richardson's last person felony and later felony conviction. 20 Kan. App. 2d at 942-43. The panel rejected the State's argument that the sentencing grid already accounted for an offender's criminal history because the factor here was not one included in the criminal history.

Richardson pled guilty to driving with a suspended license; an offense he committed on July 13, 1993. Richardson's criminal history included three person felonies committed when Richardson was 16 years old, 14 years before the present offense. His history also included one nonperson felony, one person misdemeanor, and three nonperson misdemeanors. The district court departed based on passage of time since the most serious offenses (14 years since the person felonies, and 10 years since the most recent felony), and the lack of recent person or violent offenses. 20 Kan. App. 2d at 933-34.

The Court of Appeals affirmed. The panel concluded the time elapsed since the last felony, a factor not accounted for in an offender's criminal history, "may provide a substantial and compelling reason for a departure sentence, depending on the facts of the case." 20 Kan. App. 2d at 942. The panel noted the Legislature "intended to reduce prison overcrowding while protecting public safety by creating a distinction between more serious and less serious offenders." 20 Kan. App. 2d at 943. The panel concluded the district court "was justified in giving weight to the time which had elapsed since Richardson's commission of [his prior felonies]." 20 Kan. App. 2d at 943. The panel reasoned,

"[*G*]*iven the nonviolent nature of Richardson's current offense* and the purposes of the guidelines, the sentencing court did not err as a matter of law when it examined Richardson's criminal history and concluded the time elapsed since Richardson's last felony and last person felonies were substantial and compelling reasons to depart from the presumptive sentence." (Emphasis added.) 20 Kan. App. 2d at 943.

In short, Richardson faced jail time for driving with a suspended license because his criminal history included older, more serious offenses that placed him in a presumptive prison grid box. Against this background, the district court departed and the panel affirmed. See 20 Kan. App. 2d at 943.

Shortly after *Richardson*, the Court of Appeals affirmed another downward dispositional departure. Danny L. Heath pled no contest to involuntary manslaughter after his friend and coworker died as the result of an accident that occurred when Heath drove with a blood alcohol level of .151. Heath's criminal history included "(1) residential burglary, a person felony juvenile adjudication, dated 12-7-78; (2) felony theft, a nonperson felony juvenile adjudication, dated 12-7-78; (3) three misdemeanor convictions for possession of marijuana, dated 9-11-80, 3-23-83, and 6-5-89; and

(4) driving while his license was suspended, a nonperson misdemeanor, dated 11-14-90."
*Heath*, 21 Kan. App. 2d at 411.

The district court in the journal entry said,

"'The Court finds that the juvenile [adjudication] is in no way related to the present crime; furthermore, the victim's father testified that Defendant should not be incarcerated; furthermore, the victim's mother testified that Defendant did not intentionally kill her son; furthermore, the Court finds that of all the Level V crimes, the charge at issue does not require an intent to injure.'" 21 Kan. App. 2d at 411 (quoting district court).

At sentencing, the district court stated its reasons for departing differently:

"'The nature of this case, the nature of the relationship between the parties and the disposition that has been indicated here is something that causes this court to feel that I'm compelled to depart from the standard. What I'm going to do, Mr. Heath, is I'm going to make it the sentence and order of this court that you be taken by the Sheriff of Reno County and by him delivered to the Secretary of Corrections for a period of not less than 50 months. That's the minimum sentence the court can impose in this case.

"'I am going to depart from that dispositionally. I am going to depart from that because I feel that there are mitigating factors that are substantial and compelling in nature, and those relate to the fact that at the age of 16 or 17 you committed what was now determined to be a person felony, a residential felony, and that is the factor that puts you in prison. And I find that that has nothing to do with the act that you stand before me today for. Because of the age of that case and because of the fact that there is absolutely no relation between that particular person felony on your record as a juvenile and because of the fact that they are totally unrelated, and I am going to depart and allow you to remain outside of prison.'" 21 Kan. App. 2d at 411-12.

The *Heath* panel, relying on *Richardson*, held "both the time elapsed between the last felony and the sentencing event and the similarity or relatedness of previous felonies

12

and the sentencing event may be substantial and compelling reasons for departure." 21 Kan. App. 2d at 415. The panel considered the legislative goal of uniform sentencing against the legislative goal of judicial discretion, which is forwarded by allowing trial courts to consider the age and relatedness between past offenses and the present offense leading to sentencing. The panel concluded, "[G]iven the nonviolent nature of Heath's current offense and the purpose of the guidelines, the sentencing court did not err as a matter of law when it considered the age of the offenses which made up Heath's criminal history to be a substantial and compelling reason to depart from the presumptive sentence." 21 Kan. App. 2d at 416.

Some subsequent Court of Appeals cases relied on *Heath* to conclude a court could consider "the similarity or relatedness of previous felonies" as a mitigating factor. But none of these cases have found the similarity or relatedness alone sufficed to support a departure. See *State v. Hazelton*, No. 119,703, 2020 WL 111284, at *5 (Kan. App. 2020) (unpublished opinion); see also *State v. Henderson*, No. 100,855, 2009 WL 3018088, at *4 (Kan. App. 2009) (unpublished opinion) ("Because the sentencing grid does not take into account the age of the defendant's prior convictions or the fact that the prior convictions are not related to the current conviction, a sentencing court can consider these factors to justify a departure."). But see *Hazelton*, 2020 WL 111284, at *6 (Buser, J., concurring in part and dissenting in part) ("I would find, as a matter of law, the fact that a defendant being sentenced for a drug offense under the KSGA does not have a prior drug offense, standing alone, may never be a substantial and compelling nonstatutory mitigating factor sufficient to justify a downward departure sentence.").

In *Favela*, we relied on *Richardson*. We observed the *Richardson* panel rejected the State's argument that criminal history cannot be used as a basis for departure because the sentencing grid accounts for that history. We then noted the *Richardson* court affirmed the sentencing court's departure sentence that found mitigating factors based on

the passage of time since Richardson's last felony and person felony, finding this difference in time and offense to be substantial and compelling reasons justifying departure. *Favela*, 259 Kan. at 236.

The *Favela* court then considered whether "the fact that the defendant had not previously committed any offense which would be deemed a felony if he had been an adult was a substantial and compelling reason justifying departure." 259 Kan. at 235. The *Favela* court concluded that this fact could justify departure. It noted the sentencing court's comments that defendant was "just a kid crook," pointing to his prior offenses of stealing two packages of cigarettes and possession and transportation of alcoholic beverages. 259 Kan. at 236. The sentencing court also noted the present offense, attempted second-degree murder, was out of character for the defendant, who at age 17 had just witnessed his victim stab his brother and returned to the scene after rushing his brother to the hospital. This court affirmed: "Thus, the fact that the defendant had not previously committed any offense which would be deemed a felony if he had been an adult was properly used as a substantial and compelling reason justifying departure in this case." 259 Kan. at 236.

Neither of these factors are truly part of a defendant's criminal history, even though past decisions may have colloquially characterized them as such. In other words, as far as the Guidelines are concerned, passage of time and whether a juvenile offense would have been deemed a felony if committed by an adult are irrelevant within the Guidelines. Thus, the Guidelines cannot be said to have already taken these factors into account. Moreover, the *Favela* court's discussion was not limited to these factors. We did recognize that the factors could be considered "as part of the entire package," analogizing it to the statutory mitigating factor of one who "because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed." 259 Kan. at 234-35. We concluded the sentencing court's departure was justified by its

14

findings of fact, which, "when considered as a whole, constitute substantial and compelling circumstances justifying departure." 259 Kan. at 239.

In short, no case Montgomery cites supports the broad rule he would have this court draw that a difference between past and present offense on its own can constitute a mitigating factor supporting a departure sentence. And we see none. A key legal consideration when evaluating whether a nonstatutory factor can be a mitigating factor as a matter of law is whether the Legislature, through the sentencing grid, has already taken the factor under consideration into account. If it has, then the factor cannot be a mitigating factor as a matter of law.

We find that the sentencing grid already accounts for the difference in character between a defendant's past offenses and the present offense. Thus, a district court cannot depart from the presumptive sentence solely because a defendant's criminal history does not include similar or identical crimes to the crime of conviction. Because the Legislature, through the sentencing grid, has already made that determination, it is not the province of the courts to second-guess those decisions. This does not mean that all considerations of the defendant's criminal history more broadly construed are off limits. The passage of time between offenses is a clear example of a factor that has been described as part of a defendant's "criminal history," but it is not a consideration within the Guidelines.

When, as here, a sentencing court relies on a single nonstatutory factor that cannot be a mitigating factor as a matter of law, we need not determine whether the factor is supported by the record or whether the district court acted reasonably in finding substantial and compelling reasons for supporting a departure. The sentence must be vacated because the sentencing court relied on an improper nonstatutory mitigating factor. The sentencing court identified no other factor or factors that could constitute

15

substantial and compelling reasons for departure that might independently support granting a departure in this case. See *Blackmon*, 285 Kan. at 725. The sentence must be vacated.

We vacate Montgomery's sentence and remand to the district court for resentencing.

Judgment of the Court of Appeals vacating the sentence is affirmed. The sentence is vacated, and the case is remanded to the district court with directions.