No. 95,696

STATE OF KANSAS, *Appellant*, v. ALEXIS E. BLACKMON, *Appellee*.

(176 P.3d 160)

Opinion filed February 1, 2008.

*Sheryl L. Lidtke*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: When sentencing Alexis E. Blackmon for unintentional second-degree murder, the sentencing court imposed a downward durational departure sentence equivalent to the presumptive sentence for involuntary manslaughter. The sentencing court justified the departure on a finding that the facts of the case do not "rise to the level of the manifest indifference to the value of human life required by the second-degree murder statute," K.S.A. 21-3402(b). The State appealed, presenting the issue of whether a sentencing judge's disagreement with the jury verdict is a substantial and compelling reason for departure. The Court of Appeals determined it was not and reversed and remanded for resentencing. *State v. Blackmon*, No. 95,696, unpublished decision filed February 9, 2007.

Blackmon seeks a reversal of the Court of Appeals' holding and alternatively suggests that if the articulated reason is not sufficient to support departure we should affirm the departure sentence because at least three statutory departure factors "can be gleaned from the departure motion and arguments at sentencing" and these

reasons can be inferred from the sentencing court's reference to "one stab wound to the body of the victim in this case under circumstances described" by Blackmon.

We affirm the Court of Appeals' holding that the sentencing court's disagreement with the jury's verdict is not a substantial and compelling reason for departure; the purpose of the departure procedure is not to substitute the court's judgment for the jury's verdict. Additionally, because the sentencing court is required to state the reasons for departure on the record and the sentencing court referenced no other basis for departure, we decline Blackmon's invitation to glean other departure factors from the evidence or the sentencing court's vague reference to the circumstances described by Blackmon.

These conclusions lead to the question of whether Blackmon's departure motion is doomed or upon remand can the sentencing court elucidate its vague statement regarding the circumstances of the case and, if it deems appropriate, adopt one or more of the departure factors argued? We conclude the departure motion can still be considered upon remand. With regard to two other issues raised, we reject Blackmon's arguments that the State failed to meet its burden of establishing a sufficient record for appeal and determine that the issue of whether the length of departure was excessive is not before us.

## Facts

The record before us presents limited facts about the underlying crime. The record on appeal consists of a transcript of the hearing on Blackmon's motion for new trial; a transcript of the sentencing proceeding; and the court file, which includes the written jury instructions, the motion for new trial, and the motion for departure sentence. Neither the State nor Blackmon provided a trial transcript in the record on appeal.

From this limited record, we can discern that Blackmon was charged with committing the intentional second-degree murder of Corey Smith on May 14, 2005. According to Blackmon's motion for a new trial, Blackmon did not deny involvement in the stabbing death of Smith. Apparently, she testified at her trial that she was

being beaten by Smith immediately before she stabbed him. Blackmon went into the kitchen to get a knife to scare Smith, and Smith followed her, trapping Blackmon against a wall by the refrigerator. During the encounter, according to Blackmon's account, Smith ran into the knife held by Blackmon and later died from his wound. The motion for new trial also suggests that Blackmon did not know Smith had been stabbed until Blackmon saw blood on the blade of the knife, which she had dropped.

In addition to offering these facts in her motion for a new trial, Blackmon argued that even though the jury found her guilty of the lesser included offense of unintentional second-degree murder that verdict was not supported by the evidence because her actions did not show extreme indifference to human life as required by the elements of unintentional second-degree murder. She asserted that the jury must have been confused by the differing degrees of recklessness required for unintentional second-degree murder versus some of the other lesser included offenses on which the jury had been instructed, including voluntary manslaughter and reckless involuntary manslaughter. To further support her argument, she pointed to questions asked by the jury during deliberations. According to comments made by the prosecutor at the sentencing hearing, the jury had requested clarification regarding the difference between unintentional second-degree murder and involuntary manslaughter. Although we do not have a record of the instruction given in response to the question, the trial court apparently advised that unintentional second-degree murder required a higher degree of recklessness—that which rose to the level of showing extreme indifference to the value of human life.

The trial court denied Blackmon's motion for a new trial. The judge stated that while a verdict of unintentional second-degree murder was not the verdict "this Court would have reached if I had been the trier of fact," there was sufficient evidence to support the jury's verdict. Noting that it was required to view the verdict in the light most favorable to the State, the trial court found a reasonable jury could have reached a verdict of unintentional second-degree murder based on the evidence presented. The court suggested, however, that Blackmon repeat the same arguments at

sentencing because such arguments would likely be more helpful there.

Blackmon subsequently filed a motion for a downward durational departure sentence. In her motion, she argued that the State failed to show evidence of anything but self-defense and pointed out that she has no prior felony record. Also, Blackmon asserted that she was soon expecting a baby fathered by Smith. She further reiterated her arguments about jury confusion relating to the degree of recklessness shown and again argued that involuntary manslaughter or even voluntary manslaughter more closely fit this case in that the crime involved a sudden quarrel or arose in the heat of passion.

Over the State's objection, the sentencing court granted Blackmon's motion, departing from a presumptive sentence of 131 months' imprisonment to a sentence of 38 months—the presumptive sentence for involuntary manslaughter. In so ruling, the court made limited findings, stating:

"[I]t's this Court's opinion that the level of recklessness required for a sentence under the second degree unintentional statute was not met in this particular case. We have . . . one stab wound to the body of the victim in this case under circumstances described by the only other witness to the assault that, in this Court's opinion, factually does not rise to the level of the manifest indifference to the value of human life required by the second-degree murder statute."

The sentencing court found "that's a substantial and compelling mitigating factor in this case" and sentenced Blackmon to the maximum she would have received for an involuntary manslaughter conviction.

The State appealed to the Court of Appeals, arguing that the sentencing court's reasons for imposing a downward durational departure were not supported in the record. The State specifically focused on the court's prior rulings on jury instructions and on Blackmon's motion for a new trial, contending those were inconsistent with the court's decision at sentencing.

Considering these arguments, the Court of Appeals concluded that disagreement with a jury's verdict is not a substantial and compelling reason for imposing a departure sentence; only the actual statements by the court on the record at sentencing can be con-

sidered on appeal; and, therefore, despite several arguably valid reasons for departure that could be inferred from the limited record, the sentence should be reversed and the case remanded for resentencing.

In light of its holding, the Court of Appeals did not reach the issue of whether the extent of the downward durational departure was an abuse of discretion.

This court granted Blackmon's petition for review. See K.S.A. 20-3018(b); K.S.A. 60-2101(b).

## Analysis

### Issue 1: A Substantial and Compelling Reason?

First, Blackmon argues that the Court of Appeals erred in determining that the sentencing court failed to state substantial and compelling reasons for granting her motion for a downward durational departure sentence.

### A. Standard of Review

Upon a challenge to a departure sentence, an appellate court applies a mixed standard of review. Generally, a reviewing court first examines the record to see whether there is substantial competent evidence in support of the sentencing court's articulated reasons for granting a departure. The appellate court then determines, as a matter of law, whether the sentencing court's reasons for departure are substantial and compelling reasons justifying a deviation from the presumptive sentence defined by the legislature. See K.S.A. 2006 Supp. 21-4716(a); K.S.A. 21-4721(d); *State v. Martin*, 279 Kan. 623, 625-26, 112 P.3d 192 (2005); *State v. Murphy*, 270 Kan. 804, 806, 19 P.3d 80 (2001). To be substantial the reason must be real, not imagined, and of substance, not ephemeral. To be compelling the reason must be one which forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose. *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

### B. General Rules of Law

K.S.A. 2006 Supp. 21-4716(c) contains a nonexclusive list of substantial and compelling departure factors, such as the victim was

an aggressor or a participant in the crime, the offender played a passive or minor role or participated under duress, the defendant suffered a pattern of physical abuse by the victim and the offense was a response, and the degree of harm attributed to the crime of conviction was significantly less than typical for that offense. Sentencing courts may consider other, nonstatutory factors when imposing a departure sentence as long as there is evidence in the record to support such factors and the use of the factors would be consistent with the intent and purposes of the sentencing guidelines. *State v. Tiffany*, 267 Kan. 495, 506, 986 P.2d 1064 (1999); see *State v. Favela*, 259 Kan. 215, 233-34, 911 P.2d 792 (1996) (discussing objectives of the Kansas Sentencing Guidelines Act and concluding those goals provide guidance in determining whether reasons justifying departure are substantial and compelling).

As long as one factor relied upon by the sentencing court is substantial and compelling, the departure sentence should be upheld. *State v. Rodriguez*, 269 Kan. 633, 646, 8 P.3d 712 (2000). Each factor standing alone, however, need not be sufficient to justify the departure if the reasons taken collectively constitute a substantial and compelling basis for departure. *State v. Ussery*, 34 Kan. App. 2d 250, 253, 116 P.3d 735, *rev. denied* 280 Kan. 991 (2005) (citing *State v. Minor*, 268 Kan. 292, 311, 997 P.2d 648 [2000]).

### C. State v. Favela

In reversing the sentencing court's decision to issue a departure sentence, the Court of Appeals relied on *Favela*, 259 Kan. 215. There, the defendant had witnessed his brother being stabbed by Willard LaGrange. After taking his brother to the hospital, the defendant returned to the scene of the stabbing and brandished a gun, threatening to kill LaGrange but not pointing his gun at any person. Eventually, he surrendered to the police without firing a shot. He pled no contest to attempted second-degree murder, which with a criminal history of H carried a presumptive prison sentence of 51 to 59 months, with postrelease supervision of 24 months.

The defendant filed a motion for departure from the presumptive sentence, listing six mitigating circumstances which he con-

tended justified departure. The sentencing court, finding that the crime committed was more like an aggravated assault, granted both a durational and dispositional departure. The defendant was sentenced to a reduced prison term of 14 months, the term of imprisonment was suspended, and the defendant was placed on probation for a term of 36 months during which the defendant was to be supervised by community corrections.

In *Favela*, the Court of Appeals concluded that "the sentencing court's reasoning that the defendant was over-charged is not a substantial and compelling reason to depart." *State v. Favela*, 21 Kan. App. 2d 202, 212, 898 P.2d 1165 (1995), *rev'd* 259 Kan. 215, 911 P.2d 792 (1996). On petition for review, this court reversed the Court of Appeals' decision to vacate and remand for resentencing. The *Favela* court noted that the sentencing court specifically based the departure on other factors—the degree of harm associated with the crime was less than typical and the victim was an aggressor or participant in the underlying altercation. Also, the sentencing court adopted the mitigating factors set out in the defendant's motion for departure as justifications, such as age, immaturity, and lack of a serious prior record. See 259 Kan. at 222-26, 234-39.

The *Favela* court further rejected the State's contention that this type of sentence departure violated separation of powers by negating the prosecutor's decision to prosecute the defendant for attempted second-degree murder:

"[T]he [sentencing] court here accepted the defendant's plea of no contest for attempted second-degree murder, thereby acknowledging that the county attorney has the right to determine what crime a defendant is charged with. The court did not attempt to dismiss or amend the defendant's charge as the court in [*State v.*] *Williamson*[, 253 Kan. 163, 853 P.2d 56 (1993),] did. The sentencing court merely exercised its power of sentencing under K.S.A. 1994 Supp. 21-4716, which grants the sentencing judge the right to depart from a presumptive sentence." 259 Kan. at 222.

The *Favela* court found that, after determining there were substantial and compelling reasons to depart, the sentencing court viewed the penalty for aggravated assault and determined that a similar sentence would be appropriate. Although the sentencing court "might have chosen different words that would have made

its intention more clear," the *Favela* court's examination of the record showed that the judge was merely explaining why he chose the particular sentence and was not usurping the prosecutor's power. 259 Kan. at 224.

Under the circumstances and after considering the mitigating factors in favor of departing from the presumptive sentence, the *Favela* court upheld the defendant's departure sentence. 259 Kan. at 244.

### D. Lack of Recklessness

In the present case, the Court of Appeals panel distinguished *Favela*. Unlike the situation in *Favela* where the sentencing court enunciated factors in addition to a belief that the defendant had been overcharged, here the Court of Appeals panel concluded the "only basis for the sentencing court's downward departure was the court's personal opinion the jury should have convicted the defendant of involuntary manslaughter and not second-degree unintentional murder." *Blackmon*, slip op. at 8. The Court of Appeals panel concluded this "personal disagreement" was not a substantial and compelling reason for the downward durational departure sentence and stated that "[i]f the evidence here was insufficient to support the factfinders' verdict of guilty of second-degree unintentional murder, the district court should have instructed the jury otherwise or entered a directed verdict." Slip op. at 8.

We disagree with the Court of Appeals panel's characterization of the sentencing court's comments as a finding of insufficient evidence. At the hearing on a motion for a new trial, the trial court specifically gave deference to the jury as finder of fact. The trial judge, who was also the sentencing judge, found there was sufficient evidence to support the verdict, stating: "I can't fault [the jury] . . . because I think circumstantially the evidence existed." As in *Favela*, the sentencing court attempted to neither dismiss nor amend Blackmon's charge.

This conclusion does not resolve the question of whether a sentencing court can rely on a form of recklessness with less culpability than the recklessness required for the crime of conviction as a factor to justify imposing a downward departure sentence, an issue

which requires our de novo review. Blackmon argues that as a matter of public policy this should be recognized as a nonstatutory departure factor.

Reason defies Blackmon's contention because the presumptive sentence is based on the crime of conviction—unintentional second-degree murder—and the level of intent or recklessness distinguishes the various lesser included offenses. The mere fact that a sentencing judge weighs the evidence regarding an element of the crime of conviction differently than did the jury is not a substantial and compelling reason for departure. To hold otherwise would allow the judge to become a "super juror," replacing the collective judgment of the jury with the judge's personal evaluation of the evidence. This substitution of judgment would erode the function of a jury in the trial, which is to determine whether the State has proven the elements of the crime beyond a reasonable doubt. Further, *Favela* did not suggest that a judge could reduce a sentence because of the judge's disagreement with either the charging decision or the jury verdict. Rather, the rationale of *Favela* was that the sentencing court could and did make findings based upon substantial and compelling departure factors other than the judge's conclusion that a different offense more appropriately fit the facts than did the crime of conviction.

### E. Other Factors

Seizing upon this distinction, Blackmon argues the findings are not so much in disagreement with the jury verdict as they are overgeneralized statements that imply several statutory and nonstatutory factors for departure. According to Blackmon, the sentencing court's stated departure factor—that the victim had but one stab wound inflicted "under the circumstances described by the only other witness to the assault, that factually does not rise to the level of manifest indifference to the value of human life" required by the second-degree murder statute—indirectly incorporates at least three statutory factors: (1) Blackmon played a minor or passive role in the crime and was under duress at the time; (2) Blackmon suffered a pattern of physical abuse and the offense was a response to that abuse; and (3) Smith, the victim, was the aggressor.

This argument fails, however, because the possibility that a sentencing court could have relied on departure factors other than those stated on the record at the time of sentencing does not provide an appellate court the basis to uphold the sentence even if the record establishes there were substantial and compelling reasons for departure that were not noted by the sentencing court. Rather, "[i]f the sentencing judge departs from the presumptive sentence, the judge shall *state on the record* at the time of sentencing the substantial and compelling reasons for the departure." (Emphasis added.) K.S.A. 2006 Supp. 21-4716(a). In addition to stating the basis for departure, "the court shall make findings of fact as to the reasons for departure . . . ." K.S.A. 2006 Supp. 21-4718(a)(4). Under the mandate of these provisions, the court's findings at the time of sentencing govern as to the reasons for departure. *Murphy*, 270 Kan. at 806; *State v. Whitesell*, 270 Kan. 259, 294, 13 P.3d 887 (2000); *State v. Gideon*, 257 Kan. 591, Syl. ¶ 21, 894 P.2d 850 (1995). " 'An appellate court reviewing a sentencing court's reasons for departure will not conduct a broader search of the record to examine all facts available to the sentencing court to determine whether there were substantial and compelling reasons for departure.' [Citation omitted.]" *State v. Salcido-Corral*, 262 Kan. 392, 415, 940 P.2d 11 (1997).

This court has stated that extensive factual findings are not required where there is sufficient evidence to support the finding of instigation and participation by the victim as a substantial and compelling reason for departure. See *Minor*, 268 Kan. at 311 (rape case). In this case, however, the victim as aggressor is at most implied by the sentencing court's conclusion, it is not specifically stated. A similar situation was addressed in *State v. Sampsel*, 268 Kan. 264, 997 P.2d 664 (2000). The 14-year-old victim participated with the 19-year-old defendant in committing the aggravated indecent liberties with a child crime through sexual intercourse. The sentencing court had heard all the testimony at trial. At the sentencing hearing, the court granted the defendant's motion for a downward departure sentence without stating specific reasons for doing so. But the journal entry of judgment entered on the day of sentencing gave the following reasons for the departure: "Duration

departure, because of victim behavior, her consent to participate, other activity along this line. Victim was a participant in this matter." 268 Kan. at 275.

One of the arguments asserted by the State on appeal in *Sampsel* was that the sentencing court failed to state facts that supported substantial and compelling reasons for departure. The defendant countered that evidence of victim participation was clearly shown. Referencing *Favela,* the *Sampsel* court stated the factors upon which the departure was based in Sampsel's case were those enumerated in K.S.A. 1998 Supp. 21-4716(b)(1)(A) (victim participation) and K.S.A. 1998 Supp. 21-4716(b)(1)(E) (degree of harm or loss attributed to crime was significantly less than typical). 268 Kan. at 280.

The *Sampsel* court found evidence in the record, based on one witness' testimony and the defendant's self-serving statements, to affirm with regard to the substantial and compelling factor of victim participation. 268 Kan. at 281. With regard to the defendant's other claimed reason for departure, significantly less degree of harm, this court found the evidence was clearly mixed. The court stated there was "no wording in the trial court's findings or written reasons that can be relied upon to uphold application of this statutory provision." 268 Kan. at 281.

In the present case, the journal entry states: "Defendant's motion for downward durational departure is argued and granted for the reasons set out on the record herein." Thus, we have no more clarification from the journal entry and no stated reasons for departure other than the trial court's disagreement with the jury verdict.

### F. Remand to Cite Reasons for Departure

This analysis raises the question of whether upon remand it is appropriate for the sentencing court to clarify the reasons for departure or whether the initial failure dooms Blackmon's departure motion. Kansas precedent shows that remand for clarification of departure reasons has been allowed with respect to upward departures.

In *State v. Peterson*, 25 Kan. App. 2d 354, Syl. ¶ 2, 964 P.2d 695, *rev. denied* 266 Kan. 1114 (1998), the Court of Appeals held, as matter of first impression, when the sentencing court fails to meet the requirements for the imposition of a departure sentence, on remand the sentencing court may cite appropriate reasons justifying the imposition of a departure sentence and impose such a sentence subject to the usual review process. In reaching this holding, the Court of Appeals panel rejected Peterson's argument that the sentencing court's failure to give substantial and compelling reasons to depart at the original sentencing hearing should mean that on remand the sentencing court was allowed to sentence him only within the presumptive sentencing range. The panel noted: "Peterson cites no statutory or case law authority to support his contentions. We believe there is none." 25 Kan. App. 2d at 357.

The panel observed that the evidence indicated the sentencing court had reasons for departure but simply did not state these reasons on the record at the initial sentencing hearing. The panel found no reason to deny the sentencing court the opportunity to state reasons for departure on remand, noting that "many cases have appeared before us where the trial court has remedied an earlier failure to comply with the appropriate procedure. We see no difficulty with this process." 25 Kan. App. 2d at 358; see also *State v. French*, 26 Kan. App. 2d 24, 27, 977 P.2d 281 (1999) (rejecting stated reason for departure but concluding that upon remand the sentencing court would not be precluded from considering additional, appropriate reasons that would justify the imposition of a departure sentence).

In a similar situation, in *State v. Garcia*, 274 Kan. 708, 56 P.3d 797 (2002), this court agreed with the defendant's contention that the sentencing court failed to make adequate findings on the record to support imposition of a prison term based on the fact that the defendant's crimes were gang related. The sentencing court neither mentioned the applicable statute in effect, K.S.A. 2001 Supp. 21-4704a(k) (gang-related felonies; presumed imprisonment), nor made a specific finding that the defendant's crimes were committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote,

further or assist in any criminal conduct by gang members." 274 Kan. at 713.

The *Garcia* court pointed to the statutory requirement that the judge "shall state on the record at the time of sentencing" the substantial and compelling reasons for departure. See K.S.A. 2006 Supp. 21-4716(a). The State argued that the facts needed to determine whether the provisions of K.S.A. 2001 Supp. 21-4704a(k) applied were "obvious" from the record. The *Garcia* court was not impressed: "This suggestion is of little comfort to a reviewing court." 274 Kan. at 717. Since the sentencing court failed to make the required findings on the record, the court vacated the sentences and concluded that upon remand "the district court is given the opportunity to make the proper findings and reimpose the same sentences if appropriate." 274 Kan. at 717.

These and similar cases relate to upward departures. We can discern no reason why the same policy would not apply to downward departures. Consequently, when a sentencing court fails to state substantial and compelling reasons for a downward departure from a presumptive sentence on the record at an initial sentencing hearing and as a result the sentence is vacated on appeal, upon remand the sentencing court may cite appropriate reasons justifying the imposition of a downward departure sentence and may impose such a sentence subject to the usual review process.

In the case at hand, the limited record available on appeal indicates the sentencing court may have had additional reasons for departure but did not clearly state these reasons on the record at the sentencing hearing. Consequently, rather than reverse the sentence as did the Court of Appeals panel, the appropriate remedy is to vacate the sentence. On remand, if the sentencing court determines there are reasons for departure other than the court's disagreement with the jury's determination that the State established an element of the crime of conviction, the sentencing court may impose a departure sentence, which then would be subject to appeal under K.S.A. 21-4721.

## Issue 2: State's Appellate Burden

Next, Blackmon argues that the State failed to show on appeal that the sentencing court's reasons justifying the downward durational departure were not supported by the record.

Essentially, Blackmon repeats her position in Issue 1, that the facts and the record support reasons for the downward departure, regardless of whether specifically articulated by the sentencing court at the sentencing hearing. Blackmon points out that, because the State brought the initial appeal, it was the State's burden to provide an adequate record on appeal. Presumably, she means to complain about the lack of a trial transcript and evidentiary motions in the record. See *State v. Holmes*, 278 Kan. 603, 612, 102 P.3d 406 (2004) (appellant has burden to designate a record that affirmatively shows prejudicial error; without such a record, appellate court presumes action of trial court was proper).

Thus, Blackmon argues that a meaningful review of the sentencing court's reasons for issuing a departure sentence is precluded by the limited record on appeal. If we were reviewing a question of whether the facts supported a sentencing court's departure finding, Blackmon's argument might have merit. Here, however, we have been presented with an issue of law and the record, although limited, is sufficient for that review.

## Issue 3: Length of Departure

Finally, Blackmon contends that the extent of the downward durational departure sentence was not disproportionate and the sentencing court did not abuse its discretion. This issue is not yet ripe for review.

The problem with Blackmon bringing this issue before this court is twofold. First, there must exist at least one substantial and compelling reason, stated by the sentencing court, justifying a downward durational departure. Then, the extent of the departure can be analyzed. Because the sentencing court's comments need more clarity in order to examine whether the departure was based on substantial and compelling reasons, an analysis of the extent of the departure is premature. Second, the Court of Appeals panel never

addressed the issue of whether the extent of the downward durational departure was an abuse of the sentencing court's discretion.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The sentence is vacated, and the case is remanded to the district court with directions for resentencing.