NOT DESIGNATED FOR PUBLICATION

No. 115,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREA SHUCKAHOSEE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed June 30, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MCANANY, P.J., GREEN and BUSER, JJ.


*Per Curiam*: Andrea Shuckahosee was convicted of aggravated burglary and theft following a bench trial. Shuckahosee appeals, making two arguments. First, Shuckahosee argues that there was insufficient evidence to support her aggravated burglary conviction. Second, Shuckahosee argues that the trial court erred by denying her request for a dispositional departure. Nevertheless, for reasons discussed below, we conclude that neither of Shuckahosee's arguments have merit. As a result, we affirm.

On October 28, 2013, at a Walmart in Lawrence, Kansas, Shuckahosee was stopped by a Walmart asset protection officer (APO) outside the front entrance of the store with a cart full of items for which she had not paid. Shuckahosee told the APO that she had gone outside without paying because she had not completed her shopping; she wanted to buy a pumpkin on display outside the store's front entrance. The APO called the police. The resulting investigation revealed that Shuckahosee had been banned from all Walmart stores because of prior thefts at Walmart stores in Topeka, Kansas. Furthermore, Shuckahosee did not have enough money on her person to pay for the items in her cart. As a result, Shuckahosee was arrested and charged with one count of aggravated burglary, a severity level 5 person felony in violation of K.S.A. 2013 Supp. 21-5807(b)(2), and one count of theft, a class A nonperson misdemeanor in violation of K.S.A. 2013 Supp. 21-5801(a)(1).

Before Shuckahosee's trial, the State moved to admit evidence of Shuckahosee's prior bad acts under K.S.A. 2013 Supp. 60-455. Specifically, the State wanted to admit evidence that Shuckahosee had previously committed three thefts at Walmart stores in Topeka to show Shuckahosee's intent, motive, and absence of mistake while committing her current crimes. Two of the previous thefts occurred on October 28, 2007. The third previous theft occurred on August 21, 2012. Based on the record, it seems Shuckahosee was eventually charged for the 2007 thefts, but it is unclear whether she was convicted for those thefts. Shuckahosee was not charged with the 2012 theft because the APO decided not to call the police. Regardless, Shuckahosee never denied that she had committed the three previous thefts. Moreover, Shuckahosee stipulated to the admissibility of those thefts as K.S.A. 60-455 evidence to be used at her trial.

Shuckahosee's bench trial was held on March 23, 2015. The State's evidence consisted of testimony from Walmart APOs who had encountered Shuckahosee in the past and the police officer who arrested Shuckahosee at the Lawrence Walmart on

2

October 28, 2013. Shuckahosee's evidence consisted of testimony from her friend as well as herself.

During the State's case, Chris Bush, the APO on duty when Shuckahosee committed the August 12, 2012, theft, testified that he stopped Shuckahosee in the Topeka Walmart where he works after she failed to pay for the items in her cart. Bush explained that Shuckahosee had placed items inside bags that she had put inside her cart. Bush explained that he saw Shuckahosee place soda in a bag, move into an open checkout lane, but then back out of that lane, pass through a closed checkout lane, and attempt to exit through the store's front entrance. Bush testified that when he confronted Shuckahosee with the fact that she had not paid for any of the items in her cart, she admitted that she was committing theft. Bush testified that when he ran Shuckahosee's name through the Walmart database, he learned that she had committed previous thefts at other Topeka Walmart stores, and for that reason, she had already been banned from all Walmart stores. Bush asserted that "even before [he] was able to access the database, [Shuckahosee] did share with [him] that she [had been] previously banned from Walmart and that it would be an aggravated burglary and trespassing if [he was] to call [the police]."

Bush testified that he "re-issued" the Walmart ban notice to Shuckahosee. According to Bush, Shuckahosee signed the ban notice, which stated that she could not go into any Walmart stores or Walmart subsidiaries from now on. Shuckahosee also provided Bush with a written confession that she "concealed items in bags after selecting [them] from [the] sales floor." Bush testified that he did not call the police since Shuckahosee was cooperative. Both Shuckahosee's ban notice and written confession were admitted into evidence without objection.

Bush also testified about the two thefts that occurred at other Topeka Walmart stores on October 28, 2007. Although Bush was not the APO on duty at those Walmart

stores, the reports from the APOs who were on duty were admitted into evidence without objection. According to one of the reports, Shuckahosee and her friend attempted to exit the store with a 26" LCD television and DVD recorder without paying for the items; Shuckahosee was dressed as a Walmart employee while her friend pretended to be a customer in need of help. When stopped by an APO outside the store's front entrance, Shuckahosee yelled at him that she just wanted to buy some pumpkins that were on display in the vestibule. When the APO asked Shuckahosee to pick out the pumpkins she wanted so they could go back inside to pay for the items in her cart, Shuckahosee was uncooperative, and she eventually fled from the store while the APO was busy talking to her friend.

Andrew Carriker, the APO on duty at the Lawrence Walmart when Shuckahosee allegedly committed the aggravated burglary and theft on October 28, 2013, testified that he watched Shuckahosee place items inside bags that she had already placed in her cart before exiting the store through the front entrance without paying. Carriker testified that Shuckahosee's actions of placing items inside bags already placed in her shopping cart was a "red flag" that she intended to commit theft. Carriker testified that he followed Shuckahosee around the store for 10 to 15 minutes before Shuckahosee went to the deli counter and then exited the store. Carriker stated that he followed Shuckahosee out of the store, stopped her in the vestibule, and asked her to return the items in her cart. Carriker stated that Shuckahosee told him she was "just outside looking at pumpkins, and that she was going to come back inside" to pay for the items in her cart.

Carriker testified that once Shuckahosee agreed to come back inside to the asset protection office, he looked up Shuckahosee's name in the Walmart database. Carriker explained that this was when he discovered that Shuckahosee had been banned from all Walmart stores because of prior thefts at Topeka stores. Carriker testified that the total value of the items in Shuckahosee's cart was $471.01.

4

Two clips from the Walmart security footage were admitted into evidence through Carriker's testimony. The first clip showed Shuckahosee standing by the deli counter while looking in different directions for about 45 seconds before pushing her cart full of unpaid items towards the front entrance doors. The second clip showed Shuckahosee exiting through the front entrance doors with her cart full of unpaid items, walking up to some pumpkins, picking up a pumpkin, and then setting the pumpkin down just before being confronted by Carriker.

Officer Frank McClelland, the police officer who arrested Shuckahosee, testified that Shuckahosee was unable to produce a receipt for the items in her cart when requested. Officer McClelland testified that when he asked Shuckahosee if she was aware that she had been banned from all Walmart stores, she told him that she thought she had been banned from only Walmart stores in Topeka. Officer McClelland also testified that Shuckahosee had $50 in cash and $372 on a bank card, which was $57.01 less than required to pay for the $472.01 worth of items in her cart. Officer McClelland testified that he knew there was only $372 on Shuckahosee's bank card because Shuckahosee told him so.

Martha Price, Shuckahosee's friend, testified that she drove Shuckahosee from Shuckahosee's home in Topeka to Lawrence to pick up another friend who was having car trouble. Price testified that when they arrived in Lawrence, Shuckahosee asked her to stop by Walmart because she needed to "pick up a few items." Price explained that she remained in her car while Shuckahosee went inside the Walmart store.

Shuckahosee testified that she went into the Lawrence Walmart store to buy tote bags. She asserted that after she found some totes she liked, she decided to place the tote bags in her cart and then placed the other items she wanted to buy inside the tote bags. Shuckahosee stated that after shopping for a while, she went to the deli counter to buy tilapia, but the people working behind the counter were not paying attention to her.

5

Shuckahosee stated that she and the man in line next to her were talking about wanting to buy tilapia, and they complained to the people behind the deli counter about not helping them. Shuckahosee testified that while she was waiting at the deli counter, she saw the pumpkins in the vestibule and decided to go look at them before paying. Shuckahosee testified that she did not believe that she was exiting the store by going into the vestibule area. Shuckahosee denied telling Officer McClelland that she had only $372 on her bank card, stating that she had enough money to pay for all the items in her cart. Shuckahosee also asserted that she requested to pay for the items in her cart, but nobody would listen to her.

Additionally, Shuckahosee testified about stealing from Topeka Walmart stores in the past. Shuckahosee testified that while she did not dispute that she had committed two thefts at Topeka Walmart stores in October 2007, she could not remember committing those thefts because she was on drugs at that time. Shuckahosee testified that she could recall committing a theft at a Topeka Walmart store in August 2012. Shuckahosee explained that she remembered signing the document banning her from Walmart stores when she was caught, but she did not read the document or listen to the APO when he was explaining the ban to her. Shuckahosee asserted that this was why she did not know that she had been banned from all Walmart stores, as opposed to just Topeka Walmart stores.

Following the conclusion of Shuckahosee's evidence, the trial court found Shuckahosee guilty of both aggravated burglary and theft. The trial judge found that the October 2007 incident with the pumpkins was "just so close" to Shuckahosee's current case that it was more than coincidental. The trial judge found that Shuckahosee had notice that she was banned from all Walmart stores. Moreover, the trial judge emphasized that the security footage of Shuckahosee by the deli counter showed that it was Shuckahosee's intent to commit theft, explaining:

6

"I can see you back—it looks like a separate display of vegetables. It's not real clear. But you're standing there and you're looking around for . . . not that long, but awhile. And then you approach the exit. And although the tape says . . . suspect . . . by hot case, I can't ever see that you went very close [to the deli]. I can't even see a hot case and you are there in the screen shot at all times. I can't even see that you got close enough to talk to anybody at the hot case. And where your eyes were primarily focused was on the checkout area where I think loss prevention hangs out a lot and that's where you were watching."

At sentencing, Shuckahosee requested that she be granted a dispositional departure to probation for the following reasons: (1) she had a job; (2) she had a support network through her friends and family; (3) she had been receiving mental health treatment; (4) she had been attempting to turn her life around; and (5) she had a difficult upbringing. Shuckahosee also emphasized that her presumptive prison sentence for the aggravated burglary based on her criminal history score of B was 120 months' imprisonment. Shuckahosee argued that it would be a waste of the taxpayers' money to put her in prison for 120 months. The State opposed Shuckahosee's departure motion, pointing out that Shuckahosee had a criminal history that was "four pages long," including "12 prior . . . theft shoplifting convictions." The State further pointed out that Shuckahosee was on postrelease supervision when she committed the crimes in this case.

The trial judge denied Shuckahosee's dispositional departure request. In doing so, the trial judge explained that she had "never seen a criminal history score [like Shuckahosee's] that ha[d] 68 prior convictions, and [she] just [could not] ignore that." The trial judge further explained that she could not ignore that Shuckahosee had committed her crimes while on postrelease supervision. Nevertheless, the trial judge believed that Shuckahosee's presumptive 120-month prison sentence for the aggravated burglary was too harsh a punishment for the crimes that Shuckahosee committed. As a result, the trial judge durationally departed from Shuckahosee's aggravated burglary conviction, sentencing Shuckahosee as if she had a criminal history score of C. This

resulted in a sentence of 60 months' imprisonment followed by 24 months' postrelease supervision. For Shuckahosee's misdemeanor theft conviction, the trial judge sentenced Shuckahosee to 12 months in the county jail, which would run concurrent with Shuckahosee's aggravated burglary sentence.

Although Shuckahosee did not timely appeal, this court retained her appeal after the trial court determined that one of the *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), exceptions allowed Shuckahosee to appeal out of time.

*Was There Insufficient Evidence to Support Shuckahosee's Aggravated Burglary Conviction?*

On appeal, Shuckahosee argues that insufficient evidence supported her aggravated burglary conviction. In making this argument, Shuckahosee does not dispute that she had been banned from all Walmart stores and, therefore, entered the Lawrence Walmart store without authorization. Instead, Shuckahosee's sole argument turns on her belief that insufficient evidence supported that she intended to commit a theft inside the Walmart store. Her contention is based on the fact that she was stopped by Carriker in the vestibule where the pumpkins were located. Shuckahosee alleges that the vestibule constituted part of the store, meaning she was still shopping when she was stopped. Based on this belief, Shuckahosee alleges that she could not have intended to commit theft.

The State responds that there was sufficient evidence showing that Shuckahosee intended to commit a theft given her suspicious behavior inside the Walmart store. The State further responds there was sufficient evidence showing that Shuckahosee intended to commit a theft based upon her previous theft at the Topeka Walmart store where she also provided the excuse that she was merely looking at the pumpkins in the vestibule. The State asserts that the past theft during which Shuckahosee used the "pumpkin excuse" shows that this was one of Shuckahosee's tactics to avoid theft prosecution.

8

*Standard of Review*

Appellate courts review whether evidence was sufficient to convict a defendant of a crime by reviewing all the evidence in the light most favorable to the State. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). Appellate courts will uphold a defendant's conviction so long as the evidence supports that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. 303 Kan. at 6. While engaging in this review, appellate courts must refrain from reweighing the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

*Applicable Law*

The elements of aggravated burglary under the theory for which Shuckahosee was charged are as follows: "Aggravated burglary is, without authority, entering into or remaining within any: . . . (2) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexually motivated crime therein." K.S.A. 2013 Supp. 21-5807(b)(2). The elements of theft under the theory for which Shuckahosee was charged are as follows: "Theft is any of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services: (1) Obtaining or exerting unauthorized control over property or services." K.S.A. 2013 Supp. 21-5801(a)(1).

Consequently, for Shuckahosee's aggravated burglary to be upheld, there must be evidence that she *intended* to commit a theft inside the Lawrence Walmart store. Based on the plain language of the aggravated burglary statute, this means an aggravated burglary may be committed under circumstances where Shuckahosee had either completed the theft inside the store or not completed the theft inside the store. Thus, this

9

court's holding hinges on whether Shuckahosee's *intent to commit the theft* was shown by the evidence.

*Sufficient Evidence Supported Shuckahosee's Aggravated Burglary Conviction*

Based on her argument, it seems as if Shuckahosee is unaware of the fact that she did not have to complete the theft inside the Walmart store to commit an aggravated burglary. This is evidenced by Shuckahosee's argument that because she contends she was still shopping, she could not have committed a theft. This is further evidenced by Shuckahosee's emphasis on the fact that she was stopped by Carriker in the vestibule. It seems Shuckahosee believes that by being in the vestibule, she had not fully exited the store when she was stopped and, therefore, could not have committed theft. As developed by the plain language of the aggravated burglary statute, however, whether Shuckahosee had completed the theft is not key to this court's determination of whether sufficient evidence supported Shuckahosee's aggravated burglary conviction. Instead, what is key is whether she intended to commit a theft inside the store.

Moreover, Shuckahosee's argument also fails to take into account that a theft can be completed without asportation. When the legislature enacted the theft statute, our Supreme Court clarified the difference between larceny under the old statute and theft under the new statute, explaining: "'Theft' under the present statute, unlike 'larceny' under the old, requires no asportation to complete the crime. All that is required is the (here unauthorized) control, coupled with the intent to deprive the owner permanently of his possession, etc." *State v. Knowles*, 209 Kan. 676, 678, 498 P.2d 40 (1972). Since then, Kansas appellate courts have continued to reaffirm that asportation is not required to commit a theft. See, *e.g.*, *State v. Plummer*, 295 Kan. 156, 166, 283 P.3d 202 (2012); *State v. Kunellis*, 276 Kan. 461, Syl. ¶ 5, 78 P.3d 776 (2003); *State v. Valdez*, 266 Kan. 774, 785, 977 P.2d 242 (1999), *abrogated on other grounds by State v. James*, 276 Kan. 737, 79 P.3d 169 (2003). Thus, the fact that Shuckahosee was still in the vestibule of the

10

Walmart store when Carriker stopped her does not mean she did not commit a theft or have the intent to commit a theft.

Most importantly, the evidence supporting that Shuckahosee intended to commit a theft inside the Walmart store was strong. To begin with, Shuckahosee's behavior inside the Walmart store was strange. Carriker testified that people placing unpaid items into bags they had already set up inside their carts is a classic "red flag" that those people are intending to commit theft. Yet, this was exactly the manner in which Shuckahosee was shopping. In fact, as testified by Bush, Shuckahosee had previously committed a theft while placing items into bags already set up in her cart at a Topeka Walmart in August 2012, and Shuckahosee admitted to committing this theft.

Additionally, as highlighted by the trial court when finding Shuckahosee guilty, Shuckahosee's intent to commit theft was established by the Walmart security footage. Again, the security footage of Shuckahosee standing by the deli near the store's front entrance showed Shuckahosee looking all around her, particularly where the checkout lanes were located, as if she were trying to see if anyone was watching her; Shuckahosee did this for about 45 seconds before exiting through the front entrance doors. Shuckahosee had testified that she went to the deli counter because she wanted to buy tilapia. She testified that she interacted with the employees behind the deli counter and a man in line next to her about buying some tilapia before getting distracted by the pumpkins and going outside. Yet, the security footage showed that Shuckahosee was not interacting with the employees behind the deli counter or with a man next to her in line. Indeed, while there were many people entering and exiting the store, the only person in the deli vicinity was Shuckahosee, and she had her back facing the deli the entire time.

Simply put, Shuckahosee's strange behavior and inconsistent statements as compared to the security footage supports that Shuckahosee's version of what happened was false. Her strange behavior and inconsistent statements support that she was

11

intending to stealing the items within her cart. Her arguments about still being in the vestibule and allegations that she intended to pay does nothing to undermine the evidence supporting that she intended to commit a theft. Also, the trial court clearly rejected Shuckahosee's argument given its guilty verdicts. Thus, to accept Shuckahosee's arguments would require this court to reweigh the evidence in her favor contrary to our long-standing rule prohibiting the reweighing of evidence. See *Daws*, 303 Kan. at 789.

Next, in addition to the strange behavior and inconsistent statements, the K.S.A. 60-455 evidence concerning Shuckahosee's prior thefts, particularly the October 2007 theft involving the pumpkins, provided strong evidence of Shuckahosee's absence of mistake and plan. Although Shuckahosee testified that she could not remember the specifics of the October 2007 theft, she did not dispute that she had committed a theft where she told the APO that she was not stealing because she was just looking at pumpkins in the vestibule. As the trial court stated in finding Shuckahosee guilty, it seems too coincidental that Shuckahosee had used the pumpkin excuse while committing a previous theft. The fact that Shuckahosee used the pumpkin excuse twice shows, as the State asserts in its brief, that the pumpkin excuse was a tactic that Shuckahosee had employed in an attempt to avoid prosecution.

Last, the fact that Shuckahosee did not have enough money to pay for the items in her cart supports that she intended to commit a theft inside the Walmart store. Although Shuckahosee disputed his testimony, Officer McClelland testified that Shuckahosee told him that she did not have enough money either in cash or on her bank card to pay for the items in her cart. Because the trial court found Shuckahosee guilty, it is clear that the trial court made a credibility determination that Officer McClelland's testimony was more credible than Shuckahosee's testimony. As a result, Shuckahosee's testimony disputing Officer McClelland's testimony is irrelevant. In turn, the evidence before this court is that Shuckahosee did not have enough money to pay for the items in her cart. When people only have so much money available, it seems unlikely that those people would not keep

12

track of the value of the items in their shopping carts, assuming they intended to pay for those items.

To summarize, Shuckahosee had been banned from the Walmart stores, but she went into a Walmart store anyway. The store was full of people. While she was inside the store she placed $472.01 worth of items in bags that she had set up in her cart, walked over to the deli counter, scanned the area around the registers for about 45 seconds, and then exited the store into the vestibule. Upon pushing her cart into the vestibule, she picked up a pumpkin just before an APO stopped her and told her to return the unpaid items in her cart. Although Shuckahosee alleged she was just looking at the pumpkins and would pay for her items, Shuckahosee had made an identical allegation 6 years earlier when committing a theft at a different Walmart store. Security footage further revealed that Shuckahosee's version of events regarding what she was doing at the deli were not true. Moreover, Shuckahosee did not have enough money on her person to pay for the items in her cart. Considering all this evidence in the light most favorable to the State, there was clearly sufficient evidence to support that Shuckahosee committed an aggravated burglary.

*Did the Trial Court Err by Denying Shuckahosee's Motion for a Dispositional Departure?*

Shuckahosee's next argument is that the trial court erred by denying her motion for a dispositional departure to probation. Shuckahosee recognizes that the trial court gave her a durational departure from her presumptive 120-month aggravated burglary prison sentence to a 60-month prison sentence and ran her 12-month misdemeanor theft sentence concurrently with her aggravated burglary sentence. Nevertheless, Shuckahosee argues that her controlling 60-month prison sentence was grossly disproportionate to the crimes she had actually committed. The State argues the trial court's decision to deny Shuckahosee's dispositional departure request was reasonable given that "Shuckahosee's criminal history spanned more than 30 years and consisted of 68 prior convictions."

13

*Standard of Review*

When appellate courts review challenges regarding "the extent of a durational departure, the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the guidelines and proportionate to the crime severity and the defendant's criminal history." *State v. Spencer*, 291 Kan. 796, 808, 248 P.3d 256 (2011). A trial court abuses its discretion if it makes an error of law, an error of fact, or a decision that is otherwise unreasonable. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

*Applicable Law*

Under K.S.A. 2016 Supp. 21-6815(a), when a trial court grants a departure, the court must "state on the record at the time of sentencing the substantial and compelling reasons for the departure." In making this determination, the court must consider nonexclusive lists of mitigating and aggravating factors listed under K.S.A. 2016 Supp. 21-6815(c)(1) and (c)(2), respectively. One mitigating factor is if the defendant's crime involves a "degree of harm of loss" that was "significantly less than typical for such offense." K.S.A. 2016 Supp. 21-6815(c)(1)(E). In addition to these nonexclusive lists, "'[s]entencing courts may consider other, nonstatutory factors when imposing a departure sentence as long as there is evidence in the record to support such factors and the use of the factors would be consistent with the intent and purposes of the sentencing guidelines. [Citations omitted.]'" *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013) (quoting *State v. Blackmon*, 285 Kan. 719, 725, 176 P.3d 160 [2008]).

Our Supreme Court has held that for a reason to be substantial, it "must be real, not imagined, and of substance, not ephemeral." *Blackmon*, 285 Kan. at 724. For a reason to be compelling, it "must be one which forces the court, by the facts of the case, to

14

abandon the status quo and to venture beyond the sentence that it would ordinarily impose." *Blackmon*, 285 Kan. at 724.

### The Trial Court's Dispositional Departure Denial was Reasonable

Because Shuckahosee does not allege that the trial court committed an error of law or fact, Shuckahosee's argument requires this court to find that the trial court's decision to deny Shuckahosee's dispositional departure request was so unreasonable that no other court would have made the same decision. Shuckahosee's main argument why the trial court's decision was unreasonable is that since she committed the aggravated burglary back in October 2013, the legislature has amended the burglary statute to ensure people in her position are only charged with theft. Shuckahosee alleges that the legislature's amendment shows that her sentence for aggravated burglary was grossly disproportionate to the severity of the crime she actually committed.

Shuckahosee is correct that the legislature has amended 21-5807—the burglary and aggravated burglary statute—in a way that would now prevent the State from charging her with aggravated burglary. The 2016 amendment states:

> "(e) This section shall not apply to any person entering into or remaining in a retail or commercial premises at any time that it is open to the public after having received a personal communication from the owner or manager of such premises not to enter such premises pursuant to K.S.A. 2015 Supp. 21-5808, and amendments thereto, except when such person is entering into or remaining in such premises with the intent to commit a person felony or sexually motivated crime therein." L. 2016, ch. 90, sec. 3.

Yet, this court is not in a position where we can find that the trial court made an unreasonable decision to deny Shuckahosee's dispositional departure request simply because the legislature made this later amendment. When Shuckahosee committed her crimes, the law allowed the State to prosecute Shuckahosee for aggravated burglary.

15

Thus, when Shuckahosee committed her crimes, the law allowed the trial court to sentence Shuckahosee in accordance with the aggravated burglary sentencing provisions.

Besides, the trial court's decision not to sentence Shuckahosee to probation seems particularly reasonable given that the trial court was not indifferent to the fact that Shuckahosee was facing a lengthy sentence. Once more, the trial court gave Shuckahosee a durational departure given that the nature of her crimes did not support her presumptive aggravated burglary sentence; this resulted in the court departing from Shuckahosee's standard presumptive aggravated burglary sentence of 120 months' imprisonment to a departure sentence of 60 months' imprisonment while running her 12-month theft sentence concurrent with her aggravated burglary sentence.

What is more, Shuckahosee's arguments ignore that her extensive criminal history resulted in her having a presumptive 120-month prison sentence in the first place. Shuckahosee's criminal history dates back to 1976 and includes 68 offenses. This resulted in Shuckahosee having a criminal history score of B and a presumptive standard-box grid sentence of 120 months' imprisonment. The trial court decided to grant a durational departure by sentencing Shuckahosee as if she had a criminal history score of C, resulting in Shuckahosee's 60-month prison sentence for her aggravated burglary conviction. If Shuckahosee had a criminal history score of I, however, she would have faced a presumptive standard-box grid sentence of 32 months' imprisonment and fallen within a border-box. K.S.A. 2016 Supp. 21-6804. Thus, Shuckahosee's criminal history played a major role in the length of her sentence.

Finally, Shuckahosee's criminal history undermines Shuckahosee's remaining arguments why the trial court erred by denying her dispositional departure request. In her brief, Shuckahosee contends that the following facts entitled her to a dispositional departure:  (1) She recently received her gaming license from the Prairie Band Potawatomie Tribe; (2) she had turned her life around as evidenced by her completion of

16

probation for an earlier crime committed in Shawnee County; (3) she was receiving mental health treatment for her bipolar disorder; and (4) she had committed a crime that was nonviolent in nature. Although it was commendable that Shuckahosee had seemingly made efforts to reform herself and improve her life, Shuckahosee's criminal history showed that she had been given many chances to reform in the past. Indeed, as evidenced by the fact that Shuckahosee had committed her current crimes while on postrelease supervision for some earlier offense, it was readily apparent that Shuckahosee had failed to take advantage of the numerous chances provided to her.

Affirmed.