NOT DESIGNATED FOR PUBLICATION

No. 126,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ISAIAS ESAI ROJO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed January 10, 2025. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: After the State charged Isaias Esai Rojo with various crimes over the course of about two and a half years—some of which were ultimately dismissed— Rojo eventually entered a global plea agreement to resolve the remaining charges. Pursuant to the global plea agreement, Rojo pled no contest to aggravated battery and, in return, the State dismissed the remaining charges and recommended a downward dispositional departure at sentencing. However, the district court did not follow the sentencing recommendation in the plea agreement and instead sentenced Rojo to prison, albeit less prison than the presumptive sentence, which Rojo now appeals.

1

On appeal, Rojo claims the district court erred by not following the sentencing recommendation in the plea agreement and by not awarding him jail time credit. The State argues this court lacks subject matter jurisdiction to review Rojo's objection to the district court's failure to follow the sentencing recommendation in the plea agreement. Finding no error, this court affirms both the district court's refusal to follow the sentencing recommendation in the plea agreement and to grant Rojo jail time credit for time he spent in jail before he was charged in this case.

FACTUAL AND PROCEDURAL BACKGROUND

Between October 2020 and February 2023, the State initiated five different criminal cases against Rojo—including the one underlying this appeal. It is necessary to briefly review the history of Rojo's other cases, for some of which he spent time in jail.

*2020-CR-724*

On October 28, 2020, the State charged Rojo with one felony count of criminal damage to property. The district court issued a summons and, after Rojo appeared, released him on an own-recognizance bond. Rojo did not spend any nights in jail for that case.

*2021-CR-361*

On April 27, 2021, the State charged Rojo with two counts of rape, and Rojo was arrested the next day. Rojo remained in jail until October 2021 when he posted bond. On January 3, 2023, the State moved to dismiss the rape charges, citing insufficient evidence, which the district court granted.

*2022-CR-338*

On April 14, 2022, the State charged Rojo with one count each of burglary, felony theft, criminal possession of a firearm by a convicted felon, and misdemeanor theft. Rojo was arrested on May 8, 2022, and posted bond two days later. After the alleged victim failed to appear at the preliminary hearing, the district court dismissed the case.

*2022-CR-973*

On October 20, 2022, the State initiated the case underlying this appeal by charging Rojo with one count of aggravated battery for an act he committed in August 2022. Rojo was arrested on January 31, 2023, and posted bond later that day.

*2023-CR-135*

Based on Rojo's alleged resistance to his arrest on January 31, 2023, in 2022-CR-973, the State charged him with one felony count of interference with law enforcement on February 3, 2023. Rojo posted bond for this case at the same time he posted bond in his aggravated battery case, 2022-CR-973.

*Plea Agreement*

Rojo eventually entered a global plea agreement with the State in which he agreed to plead no contest to one count of aggravated battery in 2022-CR-973 in exchange for the State dismissing the remaining charges in cases 2020-CR-724 (criminal damage to property) and 2023-CR-135 (interference with law enforcement). The State further agreed not to refile the dismissed charges in 2022-CR-338 or to file new drug-related charges based on his January 31, 2023 arrest. Both parties agreed to recommend the "[s]tandard term of the appropriate grid box," and the State agreed to support a downward

3

dispositional departure to 36 months of supervised probation. As expected, Rojo later filed a motion for a downward dispositional departure to 36 months of probation or, in the alternative, a downward durational departure to a shorter term of incarceration.

*Sentencing*

At Rojo's sentencing hearing, the State abided by the plea agreement and recommended the standard term of the appropriate grid box and supported Rojo's request for a downward dispositional departure to 36 months of supervised probation rather than imprisonment. The district court denied Rojo's motion for a dispositional departure but granted a downward durational departure and sentenced him to 36 months in prison. The district court explained its reasoning for granting a downward durational departure but declining to sentence him to probation rather than prison:

> "THE COURT: I have had an opportunity to review the presentence investigation, and I did review Mr. Smith's motion for departure. I have read—thoroughly read [the] psychological evaluation, and Mr. Rojo, I am not going to depart and this is why: You say you have a job, but you are still unemployed, and you haven't been proactive yet in making any changes in your life.
>
> "Your prior criminal—there are four reasons in the presentence investigation why you should go to prison. First of all, you have a criminal history score of C.
>
> "Secondly, this crime was committed while you were on felony supervision in Arkansas. You are on probation now. And while you were on probation in Arkansas, you were arrested for another three felonies besides this, 20 CR 724, 21 CR 361, and 22 CR 338. This offense was committed while you were on felony bond in those three cases.
>
> . . . .
>
> "THE COURT: . . . I have no hope that putting you on probation is going to result in any different result than the results we have had in the past.
>
> "What I am going to do as far as the sentencing, for the offense of aggravated battery with a criminal history score of C, this is a person felony, and it is a severity Level 5 offense.

"As I said, there are four reasons why you are presumptive [prison], and the possible sentences are a mitigated sentence of 53 months, a standard of 57 months, and an aggravated sentence of 60 months. I agree with Mr. Wescott's analysis, Mr. Smith's analysis, and even yours, that you have been dealt a rough hand as a kid and that—we all know that that affects people and it affects most people what we call adversely; so although I am not going to do a dispositional departure, I am going to do a durational departure and I am going to sentence you to 36 months in the custody of the Secretary of Corrections. You will have—you will receive 15 percent good time on that sentence, and you will also have a post-release supervision durational period of 24 months."

At the end of the sentencing hearing, Rojo had this exchange with the district court:

"THE DEFENDANT: Do you know what is credited?
"THE COURT: There is nothing in the presentence investigation to show credit for time served on this case.
"THE DEFENDANT: I can't like get the six months that I was sitting in there for the rape case or anything?
"THE COURT: No. It doesn't work that way. Sorry. Okay. We are in recess."

Rojo appealed.

DISCUSSION

Rojo makes two claims on appeal, arguing first that the district court erred in failing to award him jail time credit and second that it erred by not following the joint recommendation in the plea agreement to grant him probation. At the time of sentencing, Rojo was no stranger to the criminal justice system and had spent time in jail for various cases—including some cases that were ultimately dismissed, and he contends that his jail time in those other cases should be awarded in this case. Additionally, Rojo challenges the district court's decision to deviate from the parties' agreed sentencing

5

recommendation in the plea agreement and not grant him a dispositional departure to probation.

I.      THE DISTRICT COURT DID NOT ERR IN DECLINING TO AWARD ROJO JAIL TIME CREDIT

Rojo contends the district court erred in failing to award him credit for the time he spent in jail pending the disposition of his other cases because the jail time credit was not awarded in those cases. Essentially, Rojo argues that because the other cases were dismissed but he spent time in jail awaiting their dismissal, "the [jail time] credit must be awarded *somewhere* – because the awarding of jail credit is mandatory." Rojo claims "[t]he awarding of jail credit is mandatory, irrespective of the degree of connectedness between the case(s) or charge(s)." Under that theory, the time Rojo spent in jail on those other cases must be applied to this case rather than lost.

Rojo's claim requires this court to interpret the statute governing the award of jail time credit and, therefore, presents a question of law subject to unlimited review. *State v. Jones*, 318 Kan. 600, 601, 545 P.3d 612 (2024). The statute governing the award of jail time credit provides, in pertinent part:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 2022 Supp. 21-6615(a).

6

The Kansas Supreme Court recently adjusted its interpretation of this statute. For decades, the court interpreted the jail time credit statute as "requir[ing] a sentencing court to give a defendant credit for each day spent in jail, solely on account of the offense for which the defendant is being sentenced." *Campbell v. State*, 223 Kan. 528, Syl. ¶ 1, 575 P.2d 524 (1978); see *State v. Smith*, 309 Kan. 977, 981, 441 P.3d 1041 (2019) ("K.S.A. 2018 Supp. 21-6615, formerly K.S.A. 21-4614, requires the sentencing judge to award a defendant credit for time spent in custody while awaiting disposition of his case."). Therefore, under that prior interpretation, "[a] defendant [was] not entitled to credit on a sentence for time which he ha[d] spent in jail upon other, distinct, and wholly unrelated charges." *Campbell*, 223 Kan. 528, Syl. ¶ 2; see *Smith*, 309 Kan. at 981. Under that interpretation, Rojo was not entitled to any jail time credit because he only spent six hours in jail for the aggravated battery charge in 2022-CR-973 until he bonded out.

However, the Kansas Supreme Court recently overruled *Campbell* and its progeny and announced a new rule: "A defendant is entitled to jail time credit against his or her sentence for all time spent incarcerated while the defendant's case was pending disposition." *State v. Hopkins*, 317 Kan. 652, Syl., 537 P.3d 845 (2023). The *Hopkins* court explained:

> "Today we reject the *Campbell* rule in favor of interpreting the statute as it is written, i.e., as requiring the sentencing court to give a defendant 'an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case.' K.S.A. 2022 Supp. 21-6615(a). Under the obvious and plain meaning of the words chosen by the Legislature, a defendant shall be awarded jail time credit for *all* time spent in custody pending the disposition of his or her case." 317 Kan. at 657.

Under the clear and unambiguous language of the statute, as explained in *Hopkins*, Rojo is entitled to receive credit for the time he spent in jail pending the disposition of this aggravated battery case. K.S.A. 21-6615(a); *Hopkins*, 317 Kan. 652, Syl. Therefore, if Rojo spent any time in jail *after* he was charged with aggravated battery—even if the

7

time was related to a different charge—that time would count toward his jail time credit for this case.

However, as the State correctly notes, Rojo's jail time pending the disposition of his other cases occurred well *before* this case was ever initiated. The parties dispute the exact amount of time Rojo spent in jail pending the disposition of his other cases—Rojo says it was 187 days, but the State contends it was 182 days; however, the amount of time is irrelevant. There is no dispute that Rojo was not charged in this case—and thus was not awaiting disposition—at the time he was in jail. Given that the disposition of this case was not pending while Rojo spent those many months in jail for his other cases, he is not entitled to receive jail time credit for it in this case—regardless of the exact number of days. Rojo spent fewer than 24 hours in jail pending the disposition of this case, and he is therefore not entitled to any days of jail time credit. See *State v. Peterson*, 29 Kan. App. 2d 792, 795, 31 P.3d 317 (2001).

The district court did not err in concluding Rojo was not entitled to any days of jail time credit in this case.

II. THE DISTRICT COURT DID NOT ERR WHEN IT DECLINED TO FOLLOW THE SENTENCING RECOMMENDATION IN THE PLEA AGREEMENT AND DID NOT GRANT ROJO A DISPOSITIONAL DEPARTURE

Rojo contends the district court erred by not following the joint sentencing recommendation in the plea agreement to grant him a dispositional departure to probation. Specifically, Rojo claims the plea agreement constitutes a "bait-and-switch" because he "gave up his jury trial rights with the expectation that he would receive a nonprison sentence" but the judge refused to follow the parties' joint sentencing recommendation. Rojo then requests this court overrule 50 years of binding precedent in which the Kansas Supreme Court has established that district courts need not follow

8

sentencing recommendations made in plea agreements. See, e.g., *State v. Byrd*, 203 Kan. 45, 50, 453 P.2d 22 (1969).

In Kansas, the right to appellate review must be derived either from the Kansas Constitution or applicable statute, and "[a]ppellate courts have only such appellate jurisdiction as is conferred by statute, and when the record discloses a lack of jurisdiction, an appellate court has the duty to dismiss the appeal." *State v. Ehrlich*, 286 Kan. 923, Syl. ¶ 2, 189 P.3d 491 (2008). Whether appellate jurisdiction exists is a question of law over which this court exercises unlimited review. *State v. McCroy*, 313 Kan. 531, 533, 486 P.3d 618 (2021); see also *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) ("Because subject matter jurisdiction is ordinarily conferred by statute, it should be noted that the interpretation of a statute is also a question of law subject to unlimited review.").

Generally, this court has subject matter jurisdiction to "correct, modify, vacate or reverse any act, order or judgment of a district court to assure that any such act, order or judgment is just, legal and free of abuse." K.S.A. 60-2101(a). More specifically, "[a] departure sentence . . . is subject to appeal by the defendant or the state." K.S.A. 21-6820(a). Moreover, the Kansas Supreme Court has explained that even when a court partially grants a departure sentence, a defendant may appeal that decision. *State v. Looney*, 299 Kan. 903, 908, 327 P.3d 425 (2014); see K.S.A. 21-6820(a). However, the court also explained that "departure sentences are subject to appeal under K.S.A. 21-4721(a) [predecessor to K.S.A. 21-6820(a)] unless appellate jurisdiction is divested by a more specific provision." 299 Kan. at 908.

It is well settled that subsection (c) of K.S.A. 21-6820, which provides that an appellate court may not review sentences within the presumptive sentence range or resulting from an agreement between the State and defendant that was approved on the record, limits the appellate court's jurisdiction to review a departure sentence. See, e.g.,

9

*State v. Cooper*, 54 Kan. App. 2d 25, 27-28, 394 P.3d 1194 (2017) (finding that K.S.A. 2016 Supp. 21-6802[c][2] "is a more specific provision than K.S.A. 2016 Supp. 21-6820[a] that divests an appellate court of jurisdiction to review a departure sentence if warranted by the facts of the case."). Here, the State argues that K.S.A. 21-6802(d) is also a more specific statutory provision that divests the appellate court of subject matter jurisdiction in this case.

Subsection (d) of K.S.A. 21-6802 purports to limit appellate review of departure sentences and provides:

> "(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
> (1) Are supported by the evidence in the record; and
> (2) constitute substantial and compelling reasons for departure."

The Kansas Supreme Court has applied subsection (d) to a claimant's appeal from a departure sentence and explained:

> "The State or defendant may appeal a departure sentence. K.S.A. 2020 Supp. 21-6820(a). Appellate review is limited to determining 'whether the sentencing court's findings of fact and reasons justifying a departure: (1) [a]re supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure.' K.S.A. 2020 Supp. 21-6820(d)." *State v. Montgomery*, 314 Kan. 33, 36, 494 P.3d 147 (2021).

While the court explained that appellate review was limited by subsection (d), it did not address whether that limitation is a more specific provision than K.S.A. 21-6820(a) that acts as a jurisdictional bar in the same manner as in subsection (c).

10

The limiting language in the two subsections differs in that subsection (c) specifically prohibits appellate review of certain types of sentences when it says "the appellate court shall not review" those sentences, whereas the language in subsection (d) states that the court's "sentence review shall be limited to" the identified criteria. Subsection (d) appears to assume review but dictates how that review should be conducted. Subsection (c), however, prohibits review. While this may seem like a difference without a distinction, a review of the available cases demonstrates some distinction between how the court has treated these two subsections. See, e.g., *State v. Johnson*, 317 Kan. 458, 465, 531 P.3d 1208 (2023) (finding no appellate jurisdiction to review departure sentence under subsection (c)(2) because the defendant "agreed to the sentence and the district court approved the agreement on the record"); *Montgomery*, 314 Kan. at 36 (exercising appellate jurisdiction to review departure sentence citing subsection [d] without analyzing it as jurisdictional); *Cooper*, 54 Kan. App. 2d at 28 ("[E]ven though K.S.A. 2016 Supp. 21-6820(a) provides that a departure sentence is subject to appeal by the defendant or the State, an appellate court shall not review a departure sentence resulting from an agreement between the State and the defendant which the sentencing court approves on the record."); *State v. Galloway*, No. 126,591, 2024 WL 2990827, at *2-3 (Kan. App. 2024) (unpublished opinion) (reviewing departure sentence under subsection [d] when appellant argued only that probation would offer better options for treating his addiction);*State v. Wheelock*, No 125,716, 2023 WL 4990938, at *2 (Kan. App. 2023) (unpublished opinion) (finding the court has jurisdiction to review a district court's decision to run sentences consecutive when one of the sentences was a departure sentence). However, a panel of this court has found that subsection (d) acts as a jurisdictional bar to appellate review of a claim that the district court abused its discretion to order the defendant's sentences to run consecutive when it granted a durational departure in at least one of the sentences. *State v. Wilson*, No. 125,322, 2023 WL 2063056, at *1 (Kan. App. 2023) (unpublished opinion) (dismissing claim that district court abused its discretion by ordering departure sentence to run consecutive for lack of jurisdiction under K.S.A. 21-6820(d).

11

Additionally, subsections (d) and (c) are not similarly more specific than subsection (a). K.S.A. 21-6820(a) confers appellate jurisdiction on appeals from departure sentences and motions under K.S.A. 22-3504 to correct an illegal sentence. Then, subsection (c) is more specific in that it only applies to presumptive sentences and sentences from plea agreements approved on the record. Those two categories in subsection (c) are a subset of the broader category of all departure sentences referenced in subsection (a). However, subsection (d) does not apply to a subset of departure sentences. It applies to "any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime," which is arguably not more specific than subsection (a) which applies to "a departure sentence." However, subsection (d) does not apply to a motion to correct an illegal sentence under K.S.A. 22-3504 and is thus arguably more specific than subsection (a) even though it applies to all departure sentences because it does not apply to motions under K.S.A. 22-3504.

As explained above, Rojo does not challenge the district court's findings of fact or reasons for denying his request for a dispositional departure. He points to no infirmity in the district court's denial of his motion constituting an abuse of discretion, and he has therefore waived or abandoned such an argument. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned."). Rather, Rojo exclusively argues the district court's denial of his motion for a dispositional departure must be reversed because Rojo "did not get the agreed-upon sentence that he bargained for" in his plea agreement.

Clearly Rojo's argument ventures beyond the narrow statutory scope permitted for appellate review of objections to departure sentences in K.S.A. 21-6820(d). Additionally, Rojo does not contend his sentence is illegal and thus subject to appellate review on that basis. See K.S.A. 22-3504 (permitting appellate review of claims alleging illegality of a sentence). Accordingly, the State argues this court lacks subject matter jurisdiction over

12

Rojo's claims. However, unlike the defendant in *Wilson*, Rojo does challenge his departure sentence by arguing the district court should have granted him a dispositional departure to probation. While Rojo's reasons supporting his argument are not limited to those in K.S.A. 21-6820(d), the Kansas Supreme Court has not treated subsection (d) as a jurisdictional limitation to claims of error related to departure sentences. In an attempt for completeness, this court will review his claim as an objection to the district court's denial of his request for a dispositional departure under K.S.A. 21-6820(a).

Defendants may appeal a departure sentence even if they received a portion of a requested departure. K.S.A. 21-6820(a); see *State v. Ibarra*, 307 Kan. 431, 433, 411 P.3d 318 (2018) (Appellate courts have jurisdiction to review departure sentences even if the appeal is taken by the party receiving a portion of a requested departure sentence.). "Appellate review is limited to determining 'whether the sentencing court's findings of fact and reasons justifying a departure: (1) [a]re supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure.' K.S.A. 2020 Supp. 21-6820(d)." *Montgomery*, 314 Kan. at 36. As explained in *Montgomery*, the court has set out the following steps for appellate review of departure sentences:

> "'(1) determine whether the sentencing court's nonstatutory factor can be a mitigating factor as a matter of law under K.S.A. 2019 Supp. 21-6815(c); (2) if it can, then decide whether that nonstatutory factor's existence is supported by the record; and (3) if so, then determine whether the sentencing court acted reasonably when it concluded there was a substantial and compelling reason to depart in a particular case based on that nonstatutory factor by itself or collectively with other statutory or nonstatutory factors cited by the sentencing court.' [*Morley*,] 312 Kan. at 711." *Montgomery*, 314 Kan. at 36.

The court further explained the inquiries at each step:

> "'(1) whether the determination of a nonstatutory factor was guided by an erroneous legal conclusion; (2) whether substantial competent evidence supported the factual finding that

13

the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. And it is important to emphasize that only the first step involves a legal question, subject to unlimited review.' [*Morley*,] 312 Kan. at 711.

"The remaining two questions are reviewed for abuse of discretion. 312 Kan. at 711. An abuse of discretion occurs when the lower court's action is '(1) based on an error of fact, (2) based on an error of law, or (3) unreasonable.' 312 Kan. at 710." *Montgomery*, 314 Kan. at 36-37.

Rojo carries the burden to establish the district court abused its discretion. See *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024) ("The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion.").

As explained above, Rojo claims no error of fact and does not argue the district court's decision was unreasonable. Rojo's only claim on appeal is that the longstanding precedent permitting district courts to decline to follow joint sentencing recommendations in plea agreements should be overruled. See, e.g., *State v. McNabb*, 312 Kan. 609, 614, 478 P.3d 769 (2021) ("Trial courts . . . are not bound by recommendations given by the State under a plea agreement."); *Byrd*, 203 Kan. at 50 ("When a plea of guilty is tendered or received as a result of a prior plea agreement the trial judge may give the agreement consideration, but notwithstanding its existence he should reach an independent decision on whether to approve the charge or sentence concessions."). Rojo argues that "[t]his Court should revisit the *Byrd* rule, to provide a more just outcome for Mr. Rojo, and for the many other similarly situated Kansans." This court construes Rojo's argument as a claim that the district court abused its discretion by committing legal error when it declined to follow the joint sentencing recommendation in the plea agreement to grant him a dispositional departure.

Rojo concedes the longstanding law supporting the district court's ability to deviate from the sentence recommended in a plea agreement, yet he requests this court overrule that precedent. Absent an indication of an intent to alter its prior decision, this court has a duty to follow Kansas Supreme Court precedent. *State v. Scheetz*, 318 Kan. 48, 60, 541 P.3d 79 (2024) ("'[T]he Court of Appeals is duty bound to follow Kansas Supreme Court precedent.'") (quoting *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 168, 298 P.3d 1120 [2013]). It is well established that district courts are not required to follow the sentencing recommendations in a plea agreement, and Rojo failed to establish the district court abused its discretion by declining to follow the joint sentencing recommendation to grant Rojo a dispositional departure.

Rojo's appellate brief sometimes appears to allege the district court should have allowed him to withdraw his guilty plea after it declined to follow the sentencing recommendation. For example, Rojo argues: "This Court should reverse Mr. Rojo's sentence and remand, so that the district can either: (1) impose the sentencing disposition the parties agreed to, or (2) *afford Mr. Rojo the chance to withdraw his plea*." (Emphasis added.) To the extent Rojo's appeal challenges his now-regretted plea, this court lacks subject matter jurisdiction because Rojo pled no contest and did not move to withdraw his plea. See K.S.A. 22-3602(a) ("No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507 . . . ."); *State v. Showalter*, 319 Kan. 147, 171, 553 P.3d 276 (2024) ("A guilty [or no-contest] plea without a subsequent motion to withdraw deprives the appellate court of jurisdiction over the conviction."). "Once a defendant has filed a postsentence motion to withdraw a guilty plea and it is denied, the defendant may *then* appeal the denial within the direct appeal time period." 319 Kan. at 171.

CONCLUSION

Rojo did not spend more than 24 hours in jail pending the disposition of this case and is accordingly not entitled to any jail time credit. Therefore, the district court did not err in refusing to award Rojo jail time credit and its decision is affirmed. Additionally, Rojo failed to show the district court abused its discretion by not following the joint sentencing recommendation to grant him a dispositional departure to probation. Rojo identifies no error of fact or law and makes no argument that the decision was unreasonable. Rather, he seeks to have this court overrule decades of binding Kansas Supreme Court precedent, which it cannot do.

Affirmed.